**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND SCHOOLS,**

**Plaintiff,**

**v.**

**BETSY DEVOS, in her official capacity as Secretary of the U.S. Department of Education, *et al.***

**Defendants.**

**Civil Action No. 16-2448 (RBW)**

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT,**
**AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Introduction** .......... **1**

**Statutory and Reglatory Framework** .......... **4**

**Factual Background** .......... **8**

**Legal Standard** .......... **11**

**Argument** .......... **13**

**I. The Court Should Decline ACICS's Invitation to Review the Secretary's Decision to Proceed With a Final Determination to "Limit, Suspend, or Terminate" ACICS's Federal Recognition Rather Than Allowing ACICS Additional Time to Come into Compliance.** .......... **13**

A. APA Review of the Secretary's Choice of Remedy Is Not Available. .......... 13

B. Even If the Secretary's Choice of Remedy for Noncompliance Were Judicially Reviewable, That Choice Was Reasonable Here. .......... 17

**II. The Secretary's Decision to Terminate ACICS's Recognition Was Reasonable and Supported by Record Evidence.** .......... **18**

A. ACICS Admitted that It Was Noncompliant with the Regulatory Criteria. .......... 19

B. Additional Record Evidence Supports the Secretary's Finding of Noncompliance. .......... 21

1. ACICS failed to develop and effectively implement standards for evaluating institutions. .......... 22

2. ACICS lacked an effective set of monitoring and evaluation approaches that would allow it to sufficiently identify and report problems with IHE's continued compliance. .......... 23

3. ACICS's enforcement program was ineffective. .......... 25

4. ACICS failed to maintain a systemic program of review of the adequacy and relevancy of its standards. .......... 27

**III. The Secretary's Decision Complied with Procedures Required by Law.** .......... **28**

A. The Department Staff Complied with Relevant Regulations in Making Its Recommendation. .......... 30

1. The Department's career employees did not err by speaking to their politically-appointed supervisor regarding ACICS's petition .......... 30

2. The Department did not err in declining to consider certain supplemental information offered by ACICS. .......... 31

3. ACICS identifies no prejudicial procedural errors arising from the department staff's report and analysis. ....34

B. NACIQI Complied with Relevant Regulations. ....35

C. The SDO Complied with Relevant Regulations. ....37

**Conclusion .... 39**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aircraft Owners & Pilots Association v. Federal Aviation Administration*,
600 F.2d 965 (D.C. Cir. 1979) ........ 12

*Alaska Department of Environmental Conservation v. Environmental Protection Agency*,
540 U.S. 461 (2004) ........ 12

*Association of Data Processing Service Organizations, Inc. v. Board of Governors of Federal Reserve System*,
745 F.2d 677 (D.C. Cir. 1984) ........ 12

*Black v. Pritzker*,
121 F. Supp. 3d 63 (D.D.C. 2015) ........ 24, 26

*Block v. Community. Nutrition Institute*,
467 U.S. 340 (1984) ........ 14

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 12

*Drake v. Federal Aviation Administration*,
291 F.3d 59 (D.C. Cir. 2002) ........ 14

*Ellis v. Ritchie*,
803 F. Supp. 1097 (E.D. Va. 1992) ........ 28

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ........ 28

*Forsyth County. v. U.S. Army Corps of Engineers*,
633 F.3d 1032 (11th Cir. 2011) ........ 16

*Heckler v. Chaney*,
470 U.S. 821 (1985) ........ 14, 17

*Jicarilla Apache Nation v. U.S. Department of Interior*,
613 F.3d 1112 (D.C. Cir. 2010) ........ 28-29

*McLouth Steel Products Corp. v. Thomas*,
838 F.2d 1317 (D.C. Cir. 1988) ........ 29

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983) ........ 12

*National Association of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007) ........ 28

*National Shooting Sports Foundation, Inc. v. Jones*,
716 F.3d 200 (D.C. Cir. 2013) ........................................ 12

*NTCH, Inc. v. Federal Communications Commission*,
841 F.3d 497 (D.C. Cir. 2016) ........................................ 14, 15-16

*Oryszak v. Sullivan*,
576 F.3d 522 (D.C. Cir. 2009) ........................................ 13, 17, 18

*Riggs National Corp. v. Commissioner of Internal Revenue Service*,
295 F.3d 16 (D.C. Cir. 2002) ........................................ 30

*Safari Club International v. Jewell*,
842 F.3d 1280 (D.C. Cir. 2016) ........................................ 29, 30

*Securities Industry & Financial Markets Association v. U.S. Commodity Futures Trading Commission*,
67 F. Supp. 3d 373 (D.D.C. 2014) ........................................ 11-12

*Sierra Club v. Mainella*,
459 F. Supp. 2d 76 (D.D.C. 2006) ........................................ 11

*St. Lawrence Seaway Pilots Association v. U.S. Coast Guard*,
85 F. Supp. 3d 197 (D.D.C. 2015) ........................................ 13

*Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council*,
Inc., 435 U.S. 519 (1978) ........................................ 28

*Watervale Marine Co. v. U.S. Department of Homeland Security*,
55 F. Supp. 3d 124 (D.D.C. 2014) ........................................ 15

*Wright v. Foreign Service Grievance Board*,
503 F. Supp. 2d 163 (D.D.C. 2007) ........................................ 13

**<u>Statutes</u>** **Page(s)**

5 U.S.C. § 701 ........................................ 2, 13, 14

5 U.S.C. § 704 ........................................ 29

5 U.S.C. § 706 ........................................ 4, 12, 28

20 U.S.C. § 1011c ........................................ 6, 35, 36

20 U.S.C. § 1099b ........................................ *passim*

28 U.S.C. § 1331 ........................................ 13

28 U.S.C. § 1346 ........................................ 13

| **<u>Regulations</u>** | **Page(s)** |
| --- | --- |


34 C.F.R. pt. 602, Subpart B ........ 5

34 C.F.R. pt. 602, Subpart C ........ 6

34 C.F.R. § 602.1 ........ 4

34 C.F.R. § 602.16 ........ 22

34 C.F.R. § 602.17 ........ 22

34 C.F.R. § 602.19 ........ 23

34 C.F.R. § 602.20 ........ 25

34 C.F.R. § 602.21 ........ 27

34 C.F.R. § 602.31 ........ 5, 20, 33

34 C.F.R. § 602.32 ........ *passim*

34 C.F.R. § 602.34 ........ 6, 7, 35, 36

34 C.F.R. § 602.35 ........ 7

34 C.F.R. § 602.36 ........ *passim*

34 C.F.R. § 602.37 ........ *passim*

34 C.F.R. § 602.38 ........ 16

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

On December 12, 2016, the Secretary of the U.S. Department of Education (the "Department") denied the petition of plaintiff, the Accrediting Council for Independent Colleges and Schools ("ACICS"), for renewal of its federal recognition as a nationally recognized accreditor of institutions of higher education. *See In the Matter of ACICS*, Dkt. No. 16-44-O, Decision of the Sec'y (Dec. 12, 2016) at 1 ("Decision of the Sec'y") (AR_000001). The Secretary determined that ACICS was noncompliant with numerous regulatory criteria required for federal recognition. The decision was the result of a year-long administrative process that involved multiple levels of administrative review, including by Department staff, an independent federal advisory committee, a designated senior Department official, and the Secretary himself. The administrative process revealed substantial evidence of ACICS's regulatory noncompliance. Indeed, on numerous occasions throughout that process, including in written submissions to the Secretary, ACICS *admitted* that it was not fully compliant with the regulatory criteria. ACICS has also acknowledged in hearings before this Court that it has remained in noncompliance. *See infra* 19 n.5 (providing transcript citations).

The Higher Education Act, as amended, compels the Secretary of Education (the "Secretary") to take action against any accrediting agency that fails to demonstrate full compliance with the relevant criteria. *See* 20 U.S.C. § 1099b(l). Among the possible remedies provided in the statute are termination of a noncompliant accrediting agency's federal recognition, or a conditional extension of federal recognition for a limited period of time. *Id.* As it did throughout the administrative process, in the Complaint currently before the Court, ACICS argues not that the Secretary erred in finding ACICS noncompliant, but rather that the Secretary

should have exercised the Secretary's discretionary authority to conditionally extend ACICS's recognition for 12 months to allow ACICS to attempt to come into compliance. *See, e.g.*, Compl. ¶¶ 44, 73, 74-79 (ECF No. 1). But the decision of whether to deny or conditionally (and temporarily) extend the federal recognition of a noncompliant accrediting agency is a decision that Congress committed by law to the discretion of the Secretary. *See* 20 U.S.C. § 1099b(l). Moreover, by explicitly using discretionary language, the regulations implementing the remedial provisions of the HEA reaffirm the discretionary nature of the Secretary's choice of remedy. *See* 34 C.F.R. § 602.37(d) (incorporating the procedures provided in 34 C.F.R. § 602.36(e)). As such, the Administrative Procedure Act ("APA") does not allow for review of any claims arising from the Secretary's choice of which statutory remedy to apply to ACICS. *See generally* 5 U.S.C. § 701(a)(2).

And even if that decision were reviewable, the Secretary's choice of remedy was reasonable. At least some of the Secretary's findings of noncompliance pertained to areas in which ACICS had previously been found to be noncompliant when ACICS last applied for renewal of its federal recognition, in 2011. At that time, the Department granted ACICS a conditional recognition, requiring ACICS to submit a compliance report within 12 months. ACICS's subsequent compliance report promised to make further progress in certain areas, and based on that report, the Department in 2013 extended ACICS's federal recognition. *See id.* Yet three years later in the Department's most recent review, it became apparent that ACICS had not fulfilled all of the commitments it had previously made, was once again in noncompliance, and was asking for yet another chance. The problems with ACICS's accreditation scheme as of December 2016 were so "profound," and ACICS had shown such "lack of progress in addressing those problems in crucial areas," that the Secretary did not believe ACICS "would be able to

both revise (or, in some instances, enact) policies and demonstrate its effective implementation of those policies within 12 months … ." Decision of the Sec'y at 10 (AR_0000010). The Secretary was not obliged to extend conditional federal-recognition based on more (hollow) promises from ACICS.

The only issue properly before the Court is whether the Secretary's determination of ACICS's noncompliance was rationally related to the record evidence. The Secretary's finding that ACICS was noncompliant with numerous regulatory requirements is based not only on ACICS's admissions, but also on extensive additional evidence contained in the administrative record. Among other deficiencies, ACICS failed to adopt and properly implement standards relating to student achievement, failed to demonstrate its ability to monitor effectively the institutions it accredited, and failed to initiate in a timely manner adverse action against institutions engaging in misconduct. In some of the more egregious instances of ACICS's noncompliance, it even reaccredited institutions despite being aware of their failure to abide by ACICS's own standards. Accrediting agencies are supposed to protect students and the federal taxpayer by ensuring that the institutions they accredit meet basic levels of quality. The record underlying the Secretary's decision confirms ACICS's failure to carry out that function, and it contains direct evidence of the harm caused by that failure. *See, e.g.*, Ltr. from Thirteen State Att'ys. Gen. to the Sec'y (Apr. 8, 2016) (AR_009561-009563) ("[ACICS's] decisions to accredit low-quality for-profit schools have ruined the lives of hundreds of thousands of vulnerable students whom it was charged to protect. It has enabled a great fraud upon our students and taxpayers."). Because the Secretary's determination of noncompliance relates rationally to record evidence, defendants are entitled to summary judgment on ACICS's claims seeking to have the Secretary's determination declared arbitrary and unsupported by evidence.

ACICS also attempts to raise a procedural challenge to the Secretary's decision. Here, too, ACICS grasps at straws. ACICS identifies no process to which it was entitled but denied. Its allegation that the review of its petition for renewal of recognition was unlawfully "politicized" because it was the subject of national public debate and public commentary lacks any legal support. And ACICS makes no attempt to meet its burden of showing that any purported procedural error was prejudicial. *See* 5 U.S.C. § 706. ACICS had ample opportunity throughout the administrative process to present relevant evidence and to cure any procedural deficiencies it believed might have occurred. Rather than taking advantage of those opportunities to provide evidence of its regulatory compliance, however, ACICS did the opposite: it admitted noncompliance, and (again) pleaded for the Secretary to issue a relatively more mild form of sanction.

The Secretary's conclusion that ACICS was noncompliant is rationally based on the record evidence, including ACICS's own admissions, and comports with the procedures provided in the relevant statute and regulations. Accordingly, defendants respectfully request the Court deny ACICS's motion for summary judgment and enter judgment in defendants' favor.

## STATUTORY AND REGLATORY FRAMEWORK

Accrediting agencies are private entities designed to oversee institutions of higher education ("IHEs") and to serve as "reliable authorities regarding the quality of education or training offered by the institutions or programs they accredit." 34 C.F.R. § 602.1; *see also id.* § 602.3. They carry out that quality assurance function through a variety of activities, including by promulgating standards designed to govern IHE institutional quality; and by assessing and continuously monitoring an IHE's compliance with those standards. *See, e.g.*, 20 U.S.C. §§ 1099b(a), (c).

Pursuant to Title IV of the Higher Education Act of 1965 ("HEA"), as amended, only IHEs accredited by a federally recognized accrediting agency can provide students with access to federal student aid programs. *See generally id.* § 1099c. Not all accrediting agencies are federally recognized. The HEA authorizes the Secretary, where appropriate, to provide federal recognition to accrediting agencies. *See id.* § 1099b. An accrediting agency seeking federal recognition must demonstrate compliance with specific regulatory criteria. *Id.* § 1099b(a); *see also* 34 C.F.R. pt. 602, Subpart B—The Criteria for Recognition. To demonstrate compliance with those criteria, an agency must have standards and policies in place that comport with the regulatory requirements, and the accrediting agency must be able to prove the effectiveness of those policies and procedures in evaluating IHEs. *See, e.g.*, 20 U.S.C. §§ 1099b(l); 34 C.F.R. §§ 602.31(a)(2), 602.32(c), 602.36(e)(2), 602.37(d). Because "[n]o accrediting agency . . . may be recognized by the Secretary . . . for a period of more than 5 years[,]" to maintain its federal recognition, an accrediting agency must apply for renewal of federal recognition at a minimum of every five years, depending on the length of the prior period of recognition. *See* 20 U.S.C. § 1099b(d).

If the Secretary determines that an accrediting agency applying for renewal of federal recognition has failed to apply effectively the specified regulatory criteria or is otherwise noncompliant with any of those criteria, the HEA requires the Secretary to take one of two courses of action: "(A) after notice and opportunity for a hearing, limit, suspend, or terminate the recognition of the agency or association; or (B) require the agency . . . to take appropriate action to bring the agency . . . into compliance with such requirements within a timeframe specified by the Secretary." *Id.* § 1099b(l). If the Secretary invokes the second option, the timeframe specified "shall not exceed 12 months unless the Secretary extends such period for good cause."

*Id.* § 1099b(l)(B)(i). Whether to invoke the first or second option against a noncompliant agency is a decision that the HEA and its implementing regulations commit to the Secretary's discretion. *Id.* § 1099b(l); *see also* 34 C.F.R. § 602.37(d) (the Secretary may consider the second option only if the Secretary "concludes that the agency *will demonstrate or achieve compliance* with the criteria for recognition *and demonstrate effective application* of those criteria within 12 months or less") (emphasis added).

The HEA and its implementing regulations create an extensive administrative process governing recognition decisions. *See generally* 34 C.F.R. pt. 602, Subpart C—The Recognition Process. The Department's Office of Postsecondary Education ("OPE" or "Department staff") first considers petitions for federal recognition. OPE reviews written submissions from the petitioning agency, performs site visits, considers public comments, and reviews complaints and public comments involving the agency. *See id.* § 602.32(b). OPE prepares a written draft analysis for the agency, identifying any potential deficiencies in the agency's regulatory compliance, and allows an opportunity for agency response. *Id.* § 602.32(f). After reviewing the agency's response, OPE issues a final analysis and final report, including a recommended decision on recognition. *Id.*

OPE ultimately forwards its analysis, recommendations, and the documentation then of record to the National Advisory Committee on Institutional Quality and Integrity ("NACIQI"). *Id.* § 602.34(c). NACIQI is a statutorily-created federal advisory committee that advises the Secretary on matters related to postsecondary education and the recognition of accrediting agencies. *See generally* 20 U.S.C. § 1011c. NACIQI considers the material provided by OPE and holds a public meeting at which the accrediting agency, the Department staff, and members of the public are provided an opportunity to make presentations and respond to NACIQI's

questions. 34 C.F.R. § 602.34(e). NACIQI votes on the proposed action, and thereafter, its recommendation is forwarded to a designated senior Department official ("SDO"). *Id.* § 602.34(g).

Within ten days of the NACIQI meeting, the accrediting agency and the Department staff may submit written comments to the SDO regarding NACIQI's recommendation. *Id.* § 602.35(a). The SDO makes a recognition decision based on the record, which includes all of the materials provided to NACIQI under 34 C.F.R. § 602.34(c), the transcript of the NACIQI meeting, NACIQI's recommendation, and the agency and Department staff written comments and responses. *See id.* § 602.36(a) (contents of the record).[1] Upon review of the record, the SDO may take a variety of actions in the decision. *Id.* §§ 602.36(a), (e). Where the agency applying for recognition is found to be noncompliant with any of the required criteria, the SDO has the discretion to either: (1) deny, limit, suspend, or terminate recognition, or (2) continue the agency's recognition for a specified period. *Id.* §§ 602.36(e)(2)-(3). The SDO may exercise her discretion to invoke the latter option where she determines that the noncompliant agency will achieve compliance within 12 months or less. *Id.*; *see also* 20 U.S.C § 1099b(l). Absent further appeal, the SDO's decision constitutes the final agency decision on the application. *Id.* § 602.36(j).

An agency may appeal the SDO's determination directly to the Secretary. *Id.* § 602.37(a). Such an appeal stays the SDO's decision until the Secretary resolves the appeal. *Id.* The Secretary "renders a final decision after taking into account the [SDO's] decision, the agency's written submissions on appeal, the [SDO's] response to the appeal, if any, and the

---

[1] "New evidence" may only be submitted in the limited circumstances described in 34 C.F.R. § 602.35(c)(1). *See id.* § 602.36(a)(5); *see also* Decision of the Sec'y at 9 n.66 (AR_000009) (discussing new evidence submitted by ACICS in its appeal to the Secretary, and citing relevant regulation).

entire record before the [SDO].” *Id.* § 602.37(d). If the Secretary determines the agency is noncompliant, she has the discretion to either: (1) deny, limit, suspend, or terminate recognition, or (2) continue the agency’s recognition for a specified period. *Id.* § 602.37(d) (incorporating the procedures provided in 34 C.F.R. § 602.36(e)); *see also* 20 U.S.C. § 1099b(l). Like the SDO, the Secretary may exercise her discretion to invoke the latter option where she determines that the noncompliant agency will achieve compliance within 12 months or less. 34 C.F.R. § 602.37(d).

## FACTUAL BACKGROUND

ACICS is an accrediting agency that had received federal recognition prior to December 2016. *See* Decision of the Sec’y at 3 (AR_000003). The Department reviewed ACICS’s recognition status in 2011, at which time NACIQI recommended continued recognition under the condition that ACICS submit a compliance report within 12 months to address certain compliance issues. *Id.* At its June 2013 meeting, NACIQI recommended acceptance of the compliance report that ACICS had submitted, and the Department subsequently extended ACICS’s federal recognition for a period of three years. *Id.*

Near the conclusion of that three year period, in January 2016, ACICS filed a petition for renewal of recognition, which included approximately 6,000 pages of exhibits. *See* ACICS Renewal Pet. (AR_009677-9752); ACICS Petition Exs. (AR_000932-007089). Through the filing of its petition, ACICS triggered the extensive administrative process described above.

Pursuant to 34 C.F.R. § 602.32, the Department staff engaged in an initial review of ACICS’s petition. That review included, among other things, exchanges of information between ACICS and OPE.[2] On May 4, 2016, pursuant to 34 C.F.R. § 602.32(f)(2), OPE provided ACICS

---

[2] ACICS focuses much of its argument on one particular request for information that OPE sent to ACICS via e-mail dated March 3, 2016. *See* Mot. for Summ. J. at 20 (ECF No. 55); *see also* E-mail from Herman Bounds to Albert C. Gray (Mar. 3, 2016, 1:36 p.m.) (AR_000437-000442). In response to that request, ACICS provided the Department two tranches of information: one that was submitted on April 1,

with a draft report and analysis indicating OPE's preliminary finding that ACICS was noncompliant with numerous specified regulatory requirements. *See* Draft Staff Analysis (AR_009753-009855); Draft Staff Report (AR_009856-009894). Pursuant to 34 C.F.R. § 602.32(f)(3), ACICS had 30 days—to June 3, 2016—to respond to the draft analysis.

On June 3, 2016, ACICS submitted a narrative response to the draft report as well as dozens of supplemental evidentiary exhibits, amounting to over 2,000 pages of material. *See generally* AR_007100-009424. Following its receipt and review of ACICS's June 3, 2016 submission, OPE issued its final analysis and report. *See* Final Staff Report and Analysis (AR_000763-000931).

On June 23, 2016, NACIQI conducted a public hearing on ACICS's petition at which ACICS had the opportunity to present testimony and evidence. *See* Tr. of June 23, 2016 NACIQI Hr'g (AR_000470-762). ACICS gave a presentation at the hearing, as did OPE and numerous third-party commenters. At the hearing, ACICS admitted that it was noncompliant with the regulatory criteria and requested that NACIQI recommend to the SDO that ACICS be provided twelve months to demonstrate compliance. *See, e.g.*, *id.* Test. of Anthony Bieda, Exec. In Charge of ACICS at 78:3-4; 12-13 (AR_000547) ("[T]he real issue today we believe is the issue of whether we can come into compliance within one year or sooner. . . . We only ask that we be given the opportunity to come back before you fully compliant within one year or less[.]").

---

2016, and one that ACICS delivered to the Department on a thumb-drive on May 19, 2016. The Department considered the April 1, 2016, submission, which is included in the certified administrative record. *See generally* ACICS Resp. to Dep't's Supplemental Req. for Info. (AR_010152-010165; 007090-007099). The parties have engaged in separate briefing on the issue of whether the contents of the thumb-drive should be incorporated in the administrative record in this matter. *See* ACICS Mot. to Supplement Admin. R. (ECF No. 41); Defs.' Opp'n to Mot. to Supplement (ECF No. 59). At bottom, however, the Department has made clear that the materials delivered on the thumb-drive were not considered, directly or indirectly, by any agency decision makers at any point in the administrative process (except to the extent that duplicates of any of those materials were otherwise submitted by ACICS for inclusion in the administrative record). Defs.' Opp'n to Mot. to Supplement at 1 (ECF No. 59).

At the conclusion of the meeting, NACIQI members voted 10-3 to recommend that the Department deny ACICS's recertification petition.

Following the NACIQI hearing, ACICS submitted arguments (along with exhibits) to the SDO, *see* ACICS's Comments to SDO (AR_000361-469), and the Department also submitted arguments (AR_000322-360). The SDO issued a decision on ACICS's petition on September 22, 2016. *See* SDO Decision (AR_000314-000316). The SDO found ACICS to be noncompliant with numerous regulatory criteria, found ACICS could not come into compliance within twelve months, and accordingly withdrew ACICS's federal recognition. *Id.* On October 4, 2016, ACICS requested that the SDO reconsider her decision, *see* ACICS Req. for Recons. (AR_000236-000313), and the SDO denied that request on October 18, 2016, *see* Ltr. from SDO Den. ACICS Req. for Recons. (AR_000231-00232).

On September 23, 2016, ACICS filed with the Secretary a notice of appeal of the SDO decision. *See* ACICS Notice of Appeal (AR_000228-000230). ACICS engaged in extensive briefing before the Secretary. *See* ACICS Appeal to Sec'y (AR_000092-000227); ACICS Resp. to SDO Br. (AR_000022-000039). The Secretary conducted a *de novo* review of ACICS's petition, which included a review of the entire record. *See* Decision of the Sec'y at 1, 11 (AR_000001, 000011). During its appeal to the Secretary, ACICS again admitted it was noncompliant with numerous regulatory criteria, and it requested that the Secretary exercise discretionary authority to provide ACICS additional time to demonstrate compliance. *See generally* ACICS Appeal to Sec'y at 1 (AR_000094) ("ACICS should be given twelve months to demonstrate and achieve compliance with the required regulatory criteria for recognition.").

Consistent with ACICS's own admissions, the Secretary concluded that ACICS was noncompliant with multiple regulatory criteria. *See* Decision of the Sec'y at 6-10 (AR_000006-

000010). After providing specific examples of areas of noncompliance and the evidence supporting those findings, the Secretary "found no basis to grant ACICS full recognition." *Id.* at 8 (AR_000008). The Secretary further declined to exercise the Secretary's discretion under 20 U.S.C. § 1099b(l) and 34 C.F.R. § 602.37(d) to again continue ACICS's recognition pending submission of a compliance report. *Id.* at 8-10 (AR_000008-000010).

ACICS filed the Complaint in this case on December 15, 2016, asserting claims under the Administrative Procedure Act. *See* Compl. ¶¶ 74-88 (ECF (No. 1). ACICS moved for a temporary restraining order to enjoin implementation of the Secretary's decision. *See* ACICS Mot. for TRO & Prelim. Inj. (ECF No. 5). Following a hearing, the Court denied ACICS's request for a temporary restraining order on December 21, 2016. *See* Order (ECF No. 12). Pursuant to an Order of the Court, defendants filed the certified administrative record in this matter on January 19, 2017. *See* Certified Admin. R. (ECF No. 18).[3] The Court heard supplemental arguments on ACICS's motion for a preliminary injunction and subsequently denied that motion on February 22, 2017. *See* Order (ECF No. 38).

**LEGAL STANDARD**

In APA cases, motions for summary judgment provide "the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006); *see also Sec. Indus. & Fin. Markets Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 399 (D.D.C. 2014) ("[T]he general standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure does not apply to a review

[3] Defendants twice supplemented the record: once to provide simplified versions of certain documents, and once to resolve the inadvertent submission of an inaccurate document. *See* Certifications of Supplementation to Admin. R. (ECF Nos. 35, 57).

of agency actions."). Under the APA, a court reviews an agency decision based on the administrative record. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ("Overton Park"), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977). The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[4]

Under this standard, the agency's decision should be affirmed as long as it is supported by "a rational connection between the facts found and the choice made." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013). The court's review under this standard is narrow and highly deferential, and a reviewing court does not substitute its judgment for that of the agency. *See Overton Park*, 401 U.S. at 416; *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Thus, even when an agency explains its decision with "less than ideal clarity," a reviewing court will not upset the decision on that account "if the agency's path may reasonably be discerned." *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004). In applying this standard, a reviewing court "begins with a presumption that the agency's actions are valid" and

---

[4] In the portion of its Complaint in which ACICS alleges that the Secretary's actions are "unsupported by evidence in the administrative record," ACICS improperly cites to the substantial evidence standard contained in APA section 706(2)(E). *See* Compl. ¶¶ 85-89. That standard applies only to formal agency action in cases subject to the procedures contained in APA "sections 556 and 557 . . . or otherwise reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(E); *see also Aircraft Owners & Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 969 (D.C. Cir. 1979). The agency action at issue here does not fall within those categories. Nevertheless, the "arbitrary and capricious" standard and the "substantial evidence" standard are both lenient, and the D.C. Circuit has questioned whether there is any meaningful distinction between those two standards when used to determine the adequacy of factual support for an agency's actions. *See, e.g., Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) ("[I]n their application to the requirement of factual support, the substantial evidence standard and the arbitrary and capricious test are one and the same.").

proceeds to consider only "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *St. Lawrence Seaway Pilots Ass'n v. U.S. Coast Guard*, 85 F. Supp. 3d 197, 204 (D.D.C. 2015). "The plaintiff bears the burden of establishing the invalidity of the agency's action." *Id.* . .

The Court's jurisdiction here is based on 28 U.S.C. § 1331, but ACICS's Complaint also references another jurisdictional statute inapplicable to the instant matter. Specifically, ACICS argues that jurisdiction exists under 28 U.S.C. § 1346. *See* Compl. ¶ 11. That provision, referred to as "the Little Tucker Act," grants district court jurisdiction, concurrent with the Court of Federal Claims, over certain types of claims, such as claims for the recovery of erroneously collected federal taxes, or claims "founded on a contract with the United States that seek less than $10,000." *See Wright v. Foreign Serv. Griev. Bd.*, 503 F. Supp. 2d 163, 178 (D.D.C. 2007). This matter does not involve the types of claims addressed in 28 U.S.C. § 1346, and accordingly, ACICS's reliance on that provision is misplaced.

## ARGUMENT

### I. THE COURT SHOULD DECLINE ACICS'S INVITATION TO REVIEW THE SECRETARY'S DECISION TO PROCEED WITH A FINAL DETERMINATION TO "LIMIT, SUSPEND, OR TERMINATE" ACICS'S FEDERAL RECOGNITION RATHER THAN ALLOWING ACICS ADDITIONAL TIME TO COME INTO COMPLIANCE.

#### A. APA Review of the Secretary's Choice of Remedy Is Not Available.

The Administrative Procedure Act ("APA") provides "a limited cause of action for parties adversely affected by agency action." *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009). The APA does not allow for review of agency action that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Oryszak*, 576 F.3d at 525 ("Because the APA does not

apply to agency action committed to agency discretion by law, a plaintiff who challenges such an action cannot state a claim under the APA."); *NTCH, Inc. v. FCC*, 841 F.3d 497, 503 (D.C. Cir. 2016) ("[S]ection 701(a)(2) of the [APA] . . . bars judicial review of agency actions that are 'committed to agency discretion by law.'").

Administrative determinations are committed to agency discretion by law "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "In such circumstances, the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002). Where "no judicially manageable standards are available for judging how and when an agency should exercise its discretion," in such situations, "it is impossible to evaluate agency action for 'abuse of discretion.'" *Heckler*, 470 U.S. at 830. In determining whether sufficient, judicially manageable standards exist, courts looks to the statutory text, the legislative scheme, and implementing regulations. *See, e.g.*, B*lock v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

ACICS's Complaint explicitly challenges the Secretary's decision to proceed with a determination to "limit, suspend, or terminate" ACICS's federal recognition, pursuant to 20 U.S.C. § 1099b(l)(A), rather than allowing ACICS additional time to come into compliance and deferring a final determination for a period of up to twelve months, pursuant to 20 U.S.C. § 1099b(l)(1)(B). *See*, *e.g.*, Compl. ¶¶ 44, 73, 74-79 (alleging that the Secretary's decision not to "grant ACICS 12 months to come into full compliance" was "arbitrary and capricious"). But the plain language of the HEA and its implementing regulations make clear that no meaningful standards exist to judge the Secretary's choice of remedy. The HEA provides the Secretary the

authority to take one of two actions against federally recognized accrediting agencies that are not fully compliant with the regulatory criteria: the Secretary may either "(A) after notice and opportunity for a hearing, limit, suspend, or terminate the recognition of the agency or association; or (B) require the agency . . . to take appropriate action to bring the agency . . . into compliance with such requirements within a timeframe specified by the Secretary." 20 U.S.C. § 1099b(l). The HEA does not obligate the Secretary to choose one option over the other in any particular circumstance, and it provides no standards whatsoever that a court might use to judge the Secretary's choice of one remedial action over another. *Id.*

Moreover, the HEA's implementing regulations, which reflect the statutory scheme, contain no standards for determining what severity of sanctions is appropriate, and they do not obligate the Secretary to choose one remedial action over another in any given circumstance. *See* 34 C.F.R. § 602.37(d) (incorporating the procedures provided in 34 C.F.R. § 602.36(e)). Indeed, the regulations governing remedial action against a noncompliant accrediting agency explicitly invoke discretionary language in setting forth the Secretary's choice of remedy. *See* 34 C.F.R. § 602.37(d) (incorporating the procedures provided in 34 C.F.R. § 602.36(e), which provides that the Department "*may*" terminate recognition of a noncompliant accrediting agency, or "*may* continue the agency's recognition" under certain circumstances) (emphasis added). Courts in this circuit have held that, although the use of the word "may" in a statute or regulation is not by itself decisive of the issue, where, as here, "the word 'may' is coupled with absolutely no guidance as to how the agency *should* exercise [a discretionary choice], the matter has been committed to agency discretion by law." *Watervale Marine Co. v. U.S. Dep't of Homeland Sec.*, 55 F. Supp. 3d 124, 143 (D.D.C. 2014) (emphasis added), *aff'd on other grounds sub nom.*, 807 F.3d 325 (D.C. Cir. 2015); *see also NTCH*, 841 F.3d at 503 (When "a statute uses a permissive

term such as 'may' rather than a mandatory term such as 'shall,' this choice of language suggests that Congress intends to confer some discretion on the agency."); *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1041 (11th Cir. 2011) (even where a regulation "provided factors the Secretary had to consider," if it "does not purport to state how the agency should balance these factors in a particular case, or what weight to assign to each factor," then the factors "are guides for the exercise of the Secretary's discretion, [they] are not 'law' that a reviewing court can apply"). Put differently, even if the Secretary were to determine that a non-compliant accrediting agency was theoretically capable of achieving compliance within a 12 month period, neither the statute nor the regulations would require the Secretary to provide that agency with conditional recognition; the Secretary would have the discretion to terminate the recognition of such an agency just as she would with respect to any other non-compliant agency. ACICS cites no authority to the contrary.

Indeed, ACICS makes *no argument* in its Motion for Summary Judgment that the HEA or the implementing regulations provide judicially manageable standards that would allow the Court to review the Secretary's choice of remedy. *See generally* ACICS Mot. for Summ. J. at 17-18. Rather, ACICS cites only to the general judicial review provision contained at 34 C.F.R. § 602.38. *Id.* That regulatory provision acknowledges that a Secretary's ultimate decision to deny, limit, suspend or terminate an agency's recognition is a final agency decision that may be contested in the Federal courts. 34 C.F.R. § 602.38. Nothing in that provision, however, either allows for, or provides articulable standards for, judicial review of the Secretary's *choice of remedy*. *Id.* Accordingly, because no judicially manageable standards govern the Secretary's choice of remedy, and because the relevant regulations invoke discretionary language in setting

forth that choice, the matter has been committed to agency discretion by law and is not reviewable under the APA. *Heckler*, 470 U.S. at 830; *Oryszak*, 576 F.3d at 525.

**B. Even If the Secretary's Choice of Remedy for Noncompliance Were Judicially Reviewable, That Choice Was Reasonable Here.**

Moreover, even if APA review of the Secretary's choice of remedy were available—which it is not—the Secretary's conclusion that ACICS was unlikely to demonstrate full compliance with all regulatory criteria within 12 months was reasonable. ACICS admitted directly to the Secretary that it was non-compliant with at least 16 separate regulatory criteria. *See* ACICS Appeal to Sec'y of the SDO Sept. 22, 2016 Decision at 12-27 (AR_000105-000120). ACICS further admitted for ten of those criteria that it had not even developed the appropriate standards and policies, much less demonstrated full and effective implementation of those measures. *See Id.* And ample evidence reveals ACICS's inability to swiftly adopt and properly implement sufficient, final standards. For example, despite having applied for renewal of recognition in January of 2016, the Secretary noted that, as of December 2016, ACICS still lacked a standard with respect to student achievement in obtaining licensure. Decision of the Sec'y at 7, 9 (AR_000007); *see also id.* at 9.

ACICS expressly admitted that it had been attempting to develop such a standard "[o]ver the last three (3) years." *See* ACICS's Comments to SDO, Ex. B at 19 (AR_000414). Given that three years had passed without ACICS having even adopted a final standard regarding licensure, the Secretary was reasonable in determining that ACICS was not credible in arguing that it would adopt a new standard and provide "evidence of enforcement . . . by April 2017." *Id. . ;* Decision of the Sec'y at 7 (AR_000007).

In another example, the Secretary noted that, in 2013, ACICS "committed to implement new data verification procedures to address serious failures to meet recognition criteria [that the

Department had identified] during [ACICS's] last recognition cycle." Decision of the Sec'y at 9 (AR_000009). Rather than adopt and implement those procedures, as promised in 2013, "ACICS spent 'two years to conduct a study' and only began efforts to improve data quality when it again began seeking renewal of its recognition in 2016." *Id.* at 9-10 (AR_000009-000010); *see also* SDO Br. in Opp'n to ACICS Appeal at 30-31 (AR_000071-000072). And the Secretary expressly considered these specific examples in the broader context of ACICS's repeated failures to demonstrate the proper implementation of the regulatory criteria. Decision of the Sec'y at 8-10 (AR_000008-000010).

Particularly given ACICS's history of noncompliance, the Secretary was reasonable in concluding that the "failure by ACICS to develop and effectively implement a comprehensive scheme necessary to establish, apply, effectively monitor, and enforce the required standards . . . strongly indicates that ACICS cannot meet its ambitious promises to come into compliance within 12 months." Decision of the Sec'y at 8 (AR_000008).

## II. THE SECRETARY'S DECISION TO TERMINATE ACICS'S RECOGNITION WAS REASONABLE AND SUPPORTED BY RECORD EVIDENCE.

ACICS alleges that the Secretary's decision to deny ACICS's petition for renewed recognition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Compl. ¶¶ 74-79 ("Count One"). It separately alleges that the Secretary's decision was "unsupported by evidence in the administrative record." *Id.* ¶¶ 85-89 (Count Three"). The Secretary engaged in a *de novo* review of the entire record and concluded that ACICS was noncompliant with the regulatory criteria. *See* Decision of the Sec'y at 1 (AR_000001). That conclusion was reasonable and supported by ample evidence in the administrative record.

ACICS admitted on multiple occasions, including at the NACIQI hearing and in its submissions to the Secretary, that it was not compliant with numerous regulatory criteria. And substantial evidence from the record confirms those admissions. At oral argument in this case, ACICS has also admitted its noncompliance.[5] Thus, because a rational connection exists between the evidence in the record and the Secretary's determination, defendants are entitled to summary judgment on Counts One and Three of the Complaint.

**A. ACICS Admitted that It Was Noncompliant with the Regulatory Criteria.**

Throughout the course of the administrative review process, ACICS admitted that it did not demonstrate compliance with numerous regulatory criteria. During the NACIQI hearing, ACICS admitted that it was not seeking recognition as a fully compliant agency; rather, ACICS sought only that NACIQI recommend that the Department exercise its discretionary authority under 20 U.S.C. § 1099b(l)(B) to extend conditional recognition to ACICS. The following excerpts from the NACIQI transcript are illustrative of ACICS's position:

- "[ACICS's recently adopted] initiatives and reforms are in the early stages of implementation and require more time to bear evidence of their effectiveness. It is in that context as Chair of ACICS that I respectfully request the Committee afford [ACICS] the consideration of the additional time of one year to demonstrate compliance." Tr. of NACIQI Hr'g (June 23, 2016), Test. of Lawrence Leak, Chair of ACICS Bd. of Dirs. at 71:12-15 (AR_000540);

- "My sincere request is that you carefully consider the merits of the case that ACICS has made for the recommendation of deferral decision and a requirement of a compliance report." *Id.* at 71:16-18 (AR_000540);

[5] *See, e.g.*, TRO Hr'g Tr. 8:8-15, Dec. 20, 2016 (Statement of Counsel for ACICS, Ms. Baker: "[At the time of the NACIQI panel in June 2016,] my client had already implemented a number of measures that were designed to take effect in early July that would have put it in compliance with more than half of those 21 [criteria for recognition]. And ultimately, the other remaining approximately ten or so criteria my client has indicated *it can come into compliance* with over the next 12 months.") (emphasis added); *see also* P.I. Hr'g. Tr. 56:11-20 (testimony of ACICS Interim President Roger Williams that he "still believe[s]" that "the ACICS agency could come into compliance within 12 months"); Pl's Supp. Br. in Support of P.I. 11 (arguing that "ACICS submitted to the SDO and Secretary reams of materials that evidence the specific ways in which it had responded to the [Department staff] Report's findings, and how it was *well on its way to coming into full compliance*") (emphasis added).

- "I am here to assure you about ACICS's ability to remedy the outstanding citations within the next 12 months." *Id*., Test. of Anthony Bieda, Exec. In Charge of ACICS at 73:2-3 (AR_000542);

- "I would like to be in front of you today with the recommendation for renewal of recognition and no finding of noncompliance as was the case in 2013. *We are not asking for that.* We fully appreciate the seriousness of the [OPE] staff recommendation." *Id.* at 77:6-9 (emphasis added) (AR_000546);

- "[T]he real issue today we believe is the issue of whether we can come into compliance within one year or sooner. . . . We only ask we be given the opportunity come back before you fully compliant within one year or less[.]" *Id.* at 78:3-4, 12-13 (AR_000547);

- "We do not currently have a graduation rate [reporting requirement] but we are working to add that to the portfolio" along with "student achievement as it relates to licensure and certification pass rates." *Id.* at 85:2-3 (AR_000554);

In addition to ACICS's NACIQI testimony, ACICS admitted in its briefing to the Secretary that it could not demonstrate compliance with at least sixteen separate regulatory criteria. *See generally,* ACICS Appeal to Sec'y at 12-27 (AR_000105-000120). As mentioned above, demonstration of compliance requires not just the existence of standards and policies that comport with the regulatory criteria, but also evidence of the effectiveness of those standards and policies in evaluating IHEs. *See, e.g.*, 20 U.S.C. §§ 1099b(l); 34 C.F.R. §§ 602.31(a)(2); 602.32(c); 602.36(e)(2); 602.37(d). In its briefing to the Secretary, ACICS admitted that, with respect to ten separate regulatory criteria, it had not adopted final, compliant standards and policies. *See* ACICS Appeal to Sec'y at 16-27 (AR_000109-000120) ("ACICS has been acting pursuant to a timeline to establish new policies and procedures [with respect to ten specific criteria] and demonstrate effective implementation of those new policies within twelve months."). ACICS acknowledged that it had adopted preliminary policies regarding these ten criteria "at its August 2016 meeting," that a comment period on those policies was "currently underway," and that the revised policies would "be considered at the [ACICS] December 2016

meeting." *Id.* at 16-17 (AR_000109-000110). With respect to an additional six criteria, ACICS alleged that it had adopted new standards to address issues of noncompliance, but it admitted that "demonstration of effective implementation" of those standards was a "barrier to demonstrating compliance." *Id.* at 12-16 (AR_000105-000109).

Accordingly, ACICS did not actually seek recognition from the Secretary as a fully compliant agency. Rather, ACICS requested that it "be given twelve months to demonstrate and achieve compliance with the required regulatory criteria for recognition." *Id.* at 8 (AR_000101); *see also id.* at 9 (AR_000102) ("ACICS has the capacity to achieve compliance with each criterion for recognition and to produce evidence of effective application of the criteria within twelve months."). Indeed, even in the Complaint filed in this lawsuit, ACICS alleges not that it demonstrated compliance with the relevant criteria, but rather that it would "*be in compliance with the remaining criteria in no later than 12 months*." Compl. at ¶ 44 (ECF No. 1) (emphasis added).

ACICS's numerous admissions of noncompliance and its repeated requests to be extended conditional recognition, rather than full recognition as a compliant agency, provide a reasonable basis in support of the Secretary's conclusion that ACICS was "out of compliance with numerous regulatory criteria." Decision of the Sec'y at 1 (AR_000001).

### B. Additional Record Evidence Supports the Secretary's Finding of Noncompliance.

Beyond ACICS's admissions of general noncompliance, extensive additional record evidence supports the Secretary's determination that ACICS failed to demonstrate compliance with multiple regulatory criteria. The Secretary highlighted in his decision some of the more

egregious evidence of ACICS's noncompliance, which provide a definitive rational basis for the Secretary's findings.[6]

1. *ACICS failed to develop and effectively implement standards for evaluating institutions.*

First, the Secretary considered how ACICS measured up to the regulatory criteria contained at 34 C.F.R. §§ 602.16 and 602.17, which govern, among other things, IHE accreditation standards relating to student achievement and the existence of effective mechanisms for evaluating IHE compliance with those standards. Decision of the Sec'y at 6-7 (AR_000006-7). The Secretary noted that ACICS's "progress in developing and effectively implementing student achievement standards was entirely lacking or incoherent." *Id.* At 6. The Secretary observed that ACICS's "student achievement standards appeared to change at each stage of the [recognition] proceeding." *Id.* at 6. ACICS's newest accreditation criteria relating to these standards, which ACICS alleged to be effective as of July 2016, "enacted a scheme for evaluating student achievement that replaced the element 'graduation rates' with 'level of graduate satisfaction.'" *Id.*; *see also* ACICS Ex. 180—Accreditation Criteria effective July 1, 2016 at 144 (AR_007468). The Secretary found such a standard to be "inherently incomprehensible" as a student achievement standard because it measures only information from students who complete the program, thereby "ignor[ing] student achievement information from those students who do not complete the program." Decision of the Sec'y at 6-7 (AR_000006-7) (citing 34 C.F.R. §§ 602.16(a) and 602.17).

---

[6] The Secretary noted that the Department staff had "assembled a detailed and compelling report" that "highlight[ed] 21 separate violations of the recognition criteria." Decision of the Sec'y at 6 (AR_000006). The Secretary explained: "I will not delve into every violation here. Rather, I will review in some detail … only a non-exhaustive selection of violations that demonstrate the profound and systemic failure of ACICS to effectively meet the basic Title IV responsibilities of a nationally recognized accrediting agency." *Id.*

ACICS contends that the Secretary's conclusion on this point "is incorrect" because "level of graduate satisfaction" is just one of the several new criteria that ACICS expected institutions to consider. *See* ACICS Mot. for Summ. J. at 29 (ECF No. 55). But ACICS does not contest the Secretary's underlying point: that ACICS deleted consideration of "graduation rates," and instead established a criterion that excluded student achievement information from students who do not complete their educational program. Accordingly, ACICS does not explain how the Secretary was arbitrary in determining "incomprehensible" ACICS's attempts at establishing the student achievement standards required for recognition.

With respect to the same regulatory criteria, the Secretary further noted that "ACICS appears to lack a standard for licensure, but claims that it will develop and effectively implement one by April 2017." *Id.* That finding is proven by ACICS's explicit admission that, "[o]ver the last three (3) years, ACICS has moved toward the ability to provide license exam passage rate information at the program specific level to obtain data useable to make accrediting decisions but the process as described requires until the December 2016 Council meeting to complete this process fully, with evidence of enforcement of these new requirements available by April 2017." ACICS's Comments to SDO, Ex. B at 19 (AR_000414). ACICS does not address its failure to establish what its student achievement requirements would be with respect to licensure in its Motion for Summary Judgment. *See* ACICS Mot. for Summ. J. at 28-30.

2. *ACICS lacked an effective set of monitoring and evaluation approaches that would allow it to sufficiently identify and report problems with IHE's continued compliance.*

The Secretary next considered whether ACICS had developed an effective system for monitoring and evaluating institutions pursuant to 34 C.F.R. § 602.19, which contains regulatory criteria governing the monitoring and reevaluation of accredited institutions and programs. The Secretary concluded that ACICS failed to implement a system sufficient "to deter widespread

[IHE] misconduct regarding [student] placement, recruiting, and admissions." Decision of the Sec'y at 7 (AR_000007). "Multiple substantial settlements agreed to by ACICS-accredited institutions and actions by state attorneys general" provide evidence of ACICS's noncompliance with this criteria. *Id.*; Final Staff Report at 21-22 (000783-000784) (providing that ACICS failed to uncover or report widespread placement rate misrepresentations that had been confirmed by a California court and by a Department investigation at Corinthian schools; that ACICS had failed to impose sanctions against two other ACICS-accredited IHEs that had engaged in similar misconduct; and that ACICS's revised set of monitoring criteria, effective as of July 2016, had not yet been applied).

ACICS counters that the Secretary failed to consider ACICS's "capacity to come into full compliance" with this criteria within 12 months. *See* ACICS Mot. for Summ. J. at 31. As an initial matter, ACICS's argument appears to be another admission that, at the time of the Secretary's decision, it was noncompliant with relevant criteria. Moreover, the Secretary actually did consider ACICS's contention that it "had a system in place" that would allow it to comply with this regulatory requirement. *See* Decision of the Sec'y at 7 (AR_0000007). But the Secretary determined that ACICS's weak historical record of identifying and reporting serious instances of institutional noncompliance outweighed ACICS claims. *Id.* That the Secretary chose to weigh ACICS's extensive history of noncompliance and of not fulfilling specific commitments made to the Department more heavily than ACICS's more recent attempts at reformation, does not constitute arbitrary action. *See, e.g.*, B*lack v. Pritzker*, 121 F. Supp. 3d 63, 95 (D.D.C. 2015) ("This Court will not re-weigh the evidence and substitute its own judgment for that of the [Department]").

3. *ACICS's enforcement program was ineffective.*

The Secretary also considered ACIC's performance with respect to regulatory criteria governing enforcement of standards. Decision of the Sec'y at 7 (AR_000007). The applicable regulation, 34 C.F.R. § 602.20, "requires the agency to demonstrate it immediately initiates an adverse action against an institution when it is not in compliance with the agency's standards, and requires the institution to come into compliance within a prescribed time period or face immediate adverse action." Decision of the Sec'y at 7 (AR_000007) (citing 34 C.F.R. § 602.20). Here, the Secretary found that ACICS failed "to immediately initiate adverse action against an institution when it is not in compliance with the agency's standards," as is required by the regulation. *Id.* Multiple pieces of record evidence support the Secretary's conclusion. For example, the Department staff identified allegations of misconduct made against seven different ACICS-accredited IHEs comprising 245 separate campuses. *See, e.g.*, SDO Br. in Opp'n to ACICS Appeal at 12-13 (AR_000053-000054). Although ACICS provided a summary of instances in which it engaged in increased monitoring as a result of receiving information relating to IHE misconduct, *see* ACICS Ex. 121 (AR_010155-010156), such monitoring does not satisfy the regulatory requirement of engaging in an enforcement action, and the Department noted that none of the 245 campuses faced withdrawal of accreditation and only three had been belatedly levied with the public sanction of probation. SDO Br. in Opp'n to ACICS Appeal at 12-13 (AR_000053-000054).

In one particular instance, the State of Wisconsin's Educational Approval Board copied ACICS on a letter it sent to ACICS-accredited Everest College detailing Everest's dropout and placement rates, which fell well below ACICS's standards. *See* Ltr. from Patrick J. Sweeney to Robert Johnson (Oct. 9, 2012) at 1 (AR_009532) (noting that Everest had a 60% dropout rate and only a 29% job placement rate). ACICS took no immediate action against the school and

subsequently maintained to the Department that it was unaware of information that warranted enforcement action. *See* ACICS Ex. 127—Ltr. from Anthony Bieda to John King at 9-10 (AR_007145-007146).

In other instances, rather than taking immediate enforcement action, ACICS granted accreditation to IHEs *after* learning of their violations of ACICS's standards. For example, in late 2012, the Department made ACICS aware of evidence of fraud and misconduct at the ACICS-accredited Michigan Jewish Institute ("MJI"), at which a vast majority of the institution's students were enrolled in a program of religious studies (many of which occurred abroad) that fell outside ACICS's scope of recognition. *See, e.g.*, Final Staff Report at 16-17 (AR_000778-000779). In 2013, ACICS advised MJI of numerous findings of non-compliance and requested copies of MJI contracts with foreign institutions. *Id.* In 2014, despite not having received the contracts requested, ACICS renewed MJI's accreditation. *Id.* In light of these examples, the Secretary's finding that ACICS failed to demonstrate compliance with the regulatory criteria relating to enforcement was reasonable.

ACICS contends that the Secretary erred in failing to acknowledge adverse actions that ACICS took *after* the June 2016 NACIQI meeting. *See* ACICS Mot. for Summ. J. at 32 (citing Ex. 7 to ACICS's Req. for Reconsideration (AR_000301-000313)). The Secretary, however, did address that argument in his decision. *See* Decision of the Sec'y at 7 (AR_000007) (acknowledging ACICS's arguments that its more recent changes in policy would allow it to come into compliance within 12 months). Moreover, the Secretary did not act arbitrarily in choosing to weigh evidence of ACICS's noncompliance and unfulfilled commitments to the Department more heavily than ACICS's claims that it would become compliant at some future date. *See, e.g.*, B*lack*, 121 F. Supp. 3d at 95.

4. *ACICS failed to maintain a systemic program of review of the adequacy and relevancy of its standards.*

With respect to regulatory criteria requiring an accrediting agency to "maintain a systematic program of review that demonstrates that its standards [for evaluating IHEs]" are both adequate and relevant, *see* 34 C.F.R. § 602.21(a), the Secretary found that ACICS lacked "an effective mechanism for ensuring the adequacy of its standards outside its regular recognition cycle." Decision of the Sec'y at 8 (AR_000008). The Secretary's finding is supported by the numerous instances in which ACICS failed to uncover or report serious misconduct at the institutions it accredited, as described above, and by ACICS's admitted need to amend many of its standards, a need which ACICS admitted only after the Department identified multiple shortcomings in those standards. *See generally* ACICS Ex. 180—Accreditation Criteria effective July 1, 2016 (AR_007315-007494) (documenting changes ACICS intended to make to its standards). Moreover, as ACICS itself recognized, because its newly adopted standards had not been implemented, it was incapable of providing evidence to the Secretary that it had an effective mechanism for ensuring the adequacy of those standards. *See, e.g.*, Tr. of NACIQI Hr'g (June 23, 2016), Test. of Lawrence Leak, Chair of ACICS Bd. of Dirs. at 71:12-15 (AR_000540) *Id.* (AR_000540) (ACICS's recently adopted "initiatives and reforms are in the early stages of implementation and require more time to bear evidence of their effectiveness").

ACICS contends that the Secretary erred by not explicitly acknowledging in his decision an argument that ACICS made on appeal to the Secretary regarding the existence of an ACICS Campus Education Plan ("CEP") and by not giving sufficient weight to reformation actions that ACICS was attempting to institute through new initiatives. *See* ACICS Mot. for Summ. J. at 32-33 and n.12. As mentioned above, the Secretary reviewed the entire record *de novo*, including the documents in which ACICS posited its arguments about the existence of a CEP. *See*

Decision of the Sec'y at 1 (AR_000001). Moreover, the mere fact that ACICS was in the process of adopting new standards and procedures to address its deficiencies is not evidence that ACICS had demonstrated compliance with the criteria through effective implementation of its standards; rather it is evidence that ACICS was attempting to become compliant with the criteria at some future date. Thus, the Secretary reasonably concluded that ACICS had failed to demonstrate that it had a mechanism for ensuring the adequacy of its standards.

## III. THE SECRETARY'S DECISION COMPLIED WITH PROCEDURES REQUIRED BY LAW.

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). Beyond the APA's minimum requirements, courts lack authority "to impose upon [an] agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978). To do otherwise would violate "the very basic tenet of administrative law that agencies should be free to fashion their own rules of procedure." *Id.* at 544. Thus, in addressing APA procedural claims, courts consider whether the administrative decision making process conformed to procedural requirements prescribed by applicable statutes or regulations. *See Ellis v. Ritchie*, 803 F. Supp. 1097, 1101 (E.D. Va. 1992).

Moreover, relief under the APA is available only for "prejudicial error." 5 U.S.C. § 706; *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule."). "The harmless error rule applies to agency action because if the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C.

Cir. 2010). The burden is generally on the plaintiff to demonstrate that any given error was not harmless. *See McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C. Cir. 1988).

Here, as discussed in detail below, the majority of ACICS's procedural arguments appear to be substantive challenges to *intermediate* decisions or recommendations that preceded the final agency decision issued by the Secretary. But only "final agency action" is subject to judicial review under the APA. *See* 5 U.S.C. § 704. A final agency action is one that "mark[s] the consummation of the agency's decisionmaking process," and "one by which rights or obligations have been determined, or from which legal consequences will flow." *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016). Only the Secretary's decision of December 12, 2016 meets this criteria. Thus, the Court should reject as unreviewable under the APA any attempts by ACICS to challenge the substance of any earlier, interlocutory decisions that occurred during the administrative process.

Additionally, ACICS presents no instance in which the Department failed to adhere to its regulatory processes, and many of the purported procedural errors ACICS identifies—such as the advisory committee's consideration of public comments—are actions that the statute and governing regulations expressly require. ACICS also makes no attempt to meet its burden of showing that any purported procedural error was prejudicial. ACICS had ample opportunity to remedy certain of the purported errors it identifies, and, in any event, at no point does ACICS suggest that, but for those purported errors, the Secretary would have concluded that ACICS was compliant. Rather, as mentioned above, throughout the course of the administrative process and before the Secretary himself, ACICS admitted that it was noncompliant with numerous regulatory criteria. Thus, because ACICS cannot meet its burden of establishing prejudicial procedural error, defendants are entitled to summary judgment on ACICS's procedural claim.

## A. <u>The Department Staff Complied with Relevant Regulations in Making Its Recommendation.</u>

1. *<u>The Department's career employees did not err by speaking to their politically-appointed supervisor regarding ACICS's petition.</u>*

ACICS first argues that a procedural error occurred when the Department's Under Secretary, an official who oversees OPE, asked OPE to request certain supplemental information from ACICS during the initial review phase of ACICS's renewal application. ACICS Mot. for Summ. J. at 34. ACICS contends that this request constituted procedural error because the regulations "*do not* contemplate involvement of the Secretary or the Secretary's deputies at the OPE review stage." *Id.* (emphasis in original).

The Secretary was not involved in OPE's review of ACICS's petition, and ACICS provides no evidence to the contrary. The Under Secretary is himself a member of the Department staff. Indeed, he holds a supervisory position on the staff. No regulation prohibits his involvement in the review of an application for federal recognition. Rather, the regulations create three distinctions among agency personnel who review petitions for recognition: the Department staff, the SDO, and the Secretary. *Compare, e.g.*, 34 C.F.R. § 602.32 *with id.* § 602.36 *with id.* § 602.37. The Under Secretary does not fall into the latter two categories; she is the senior member of the first category. ACICS's argument essentially proposes that the Department's career employees are prohibited from consulting with their politically-appointed supervisors regarding certain work-related matters. No support exists for such a proposition, and it is uniformly understood (except perhaps by plaintiff) that that is not the way Executive Branch agencies work. In the absence of "clear evidence to the contrary," a "presumption of regularity supports the official acts of public officers" under which "courts presume that they have properly discharged their official duties." *Riggs Nat'l Corp. v. Comm'r*, 295 F.3d 16, 21 (D.C. Cir. 2002). ACICS cannot overcome this presumption.

2. *The Department did not err in declining to consider certain supplemental information offered by ACICS.*

Despite arguing that the OPE request for supplemental information was unlawful, ACICS next argues that the Department also erred by not considering certain information that it provided in response to that request. ACICS Mot. for Summ. J. at 20-21, 34. ACICS's argument relates to the contents of a thumb-drive that ACICS delivered to the Department on May 19, 2016. As explained in more detail in separate briefing,[7] on March 3, 2016, OPE requested that ACICS provide within 30 days certain supplemental material in support of its petition for renewed recognition. *See* E-mail from Herman Bounds to Albert C. Gray (Mar. 3, 2016, 1:36 p.m.) (AR_000437-000442). The March 3d request sought two categories information, which were identified as: (1) "Overall Questions;" and (2) "Questions related to specific standards in Jan. 2016 submission." *Id.* ACICS requested additional time to respond to the request, and OPE and ACICS ultimately agreed that ACICS would respond to the first category within 30 days, and that it would respond to the second category by May 16, 2016. *See* E-mail from Herman Bounds to Albert C. Gray (Mar. 15, 2016, 7:34 p.m.) (AR_000434). OPE explicitly cautioned, however, that "information received as late as May 16, 2016, would not allow Department staff the time to fully review and analyze it in time for the June NACIQI meeting," *id.*, and ACICS responded by acknowledging the arrangement, noting that "ACICS understands the importance of these questions," and confirming that its petition was "proceed[ing] toward the June NACIQI meeting." *See* E-mail from Albert C. Gray to Herman Bounds (Mar. 17, 2016, 11:18 a.m.) (AR_000433).

---

[7] As mentioned above, *see supra* at 8-9 n.2, the parties have engaged in separate briefing on the specific issue of whether the contents of the thumb-drive must be incorporated in the administrative record. *See* ACICS Mot. to Supplement Admin. R. (ECF No. 41); Defs.' Opp'n to Mot. to Supplement (ECF No. 59).

On May 16, 2016, ACICS uploaded but did not submit information responsive to the second category of the request. *See* E-mail from Anthony Bieda to Steve Porcelli (May 16, 2016, 11:19 p.m.) (AR_000431). On May 18, 2016, before ACICS had submitted the information, OPE made clear to ACICS that OPE "did not want to include the supplemental information in the petition at all!" *See* E-mail from Herman Bounds to Anthony Bieda (May 18, 2016, 11:14 a.m.) (AR_000430). Rather, OPE stated, "*That information will be reviewed separately*[.]" *Id.* (emphasis added). OPE suggested that ACICS could consider delivering the information to OPE on a flash drive, but repeated that OPE would "review the supplemental information that was due on May 16 separately *outside the recognition process*." Id. (emphasis added). ACICS responded: "Most helpful. We will proceed to submit on a thumbdrive. Thanks[.]" *See* E-mail from Anthony Bieda to Herman Bounds (May 18, 2016, 11:18 a.m.) (AR_000430).

On May 19, 2016, ACICS delivered a thumb-drive to OPE. *See* Decl. of Herman Bounds, Jr. ¶ 11 (Ex. 1 to ECF No. 59). OPE did not review the contents of the thumb-drive, directly or indirectly, in the course of the administrative process, and at no point did OPE provide the contents of the thumb-drive to NACIQI, the SDO, or the Secretary. *Id.*

ACICS's argument that the Department engaged in procedural error by declining to consider the contents of the thumb-drive fails for three, independent reasons. First, ACICS has not identified procedural requirements it was entitled to but denied. In its Motion, ACICS identifies only one procedure that it alleges that the Department failed to follow: a regulatory provision providing that, in analyzing an application, Department staff should take into "all available relevant information concerning the compliance of the agency with [the regulatory] criteria and in the [accrediting] agency's effectiveness in applying the criteria." 34 C.F.R.

§ 602.32. The regulations, however, do not require the Department to provide unlimited time for the submission of supplemental information. Moreover, accepting ACICS's position would have obliged the Department, under the regulatory timelines prescribed in 34 CFR § 602.31, of which ACICS was undoubtedly aware, to postpone the NACIQI hearing on ACICS' application by six months. At the time, ACICS had not undergone a full review of its recognition since 2011, and OPE's initial review of ACICS's application for renewal had identified pervasive noncompliance. In view of the severity of OPE's findings of ACICS's noncompliance, and the statutory requirement for a re-assessment of whether to continue recognition at least every five years, OPE concluded that such an extension would not have been consistent with responsible administration of the statute, and instead informed ACICS that it would not consider the contents of the thumb-drive. *See* Bounds Decl. ¶ 12.

Second, ACICS had ample opportunity to cure any deficiencies it believed existed in the evidentiary record. Specifically, ACICS could have provided information that it believed supported its application in January 2016, when it originally submitted its application. ACICS was also provided an opportunity to submit additional documentary evidence to the Department on or before June 3, 2016—two weeks *after* OPE informed ACICS that OPE would not be considering the contents of the thumb-drive. And ACICS did in fact provide a narrative response to the draft staff report and analysis, along with dozens of supporting exhibits on June 3, 2016, and the entirety of that submission is contained in administrative record. *See generally* AR_007100-009424. Indeed, ACICS has admitted that at least some of the exhibits that it submitted on June 3, 2016, *were also included* on the thumb-drive it delivered to the Department on May 19, 2016. *See* Defs.' Opp'n to Mot. to Supplement at 10 (ECF No. 59). Thus, ACICS

was clearly aware of the need to submit on June 3, 2016, documents for the Department's consideration, even though the same documents might have been contained on the thumb-drive.

Third, ACICS does not meet its burden of showing that the purported error of failing to consider the contents of the thumb-drive was prejudicial. At no point has ACICS alleged that the contents of the thumb-drive contain a "smoking gun" that proves ACICS's compliance with all of the regulatory criteria or that compliance within a year was beyond any doubt. To the contrary, on multiple occasions *after* May 19, 2016—including before the NACIQI panel, in its submissions to the Secretary, and in the Complaint filed in this case— ACICS admitted that it was noncompliant with the regulatory criteria. Indeed, as explained above, in its submission to the Secretary, ACICS admitted it could not demonstrate compliance with at least *sixteen* separate regulatory criteria. *See generally*, ACICS Appeal to Sec'y at 12-27 (AR_000105-000120). Because ACICS did not allege then, nor does it allege now, that the contents of the thumb-drive contained proof ACICS's compliance, it cannot show that any purported procedural error arising from the Department's decision not to consider the contents of the thumb-drive was prejudicial.

3. *ACICS identifies no prejudicial procedural errors arising from the department staff's report and analysis.*

ACICS next argues that the Department staff's final analysis and report was too conclusory and contained purported factual errors. ACICS Mot. for Summ. J. at 36-38. As an initial matter, ACICS fails to identify a single regulatory procedure that the Department staff purportedly violated in issuing its report. *Id.* ACICS's concern, rather, is with the content of the report and the conclusions that the staff drew from the facts gathered. *Id.* This argument clearly concerns a matter of *factual* dispute, not procedural error, and ACICS had ample opportunity to address those purported factual issues.

First, as mentioned, ACICS had the opportunity to respond to the draft staff analysis on June 3, 2016, and it did in fact raise its concerns through both a narrative response to the report and through additional factual submissions. *See generally* AR_007100-009424. Second, ACICS had the opportunity to make presentations relating to the content of the staff report at the NACIQI hearing. *See generally* Tr. of NACIQI Hr'g (June 23, 2016) (AR_000470-000762). Finally, the Secretary's decision—which is the final agency action under review in this lawsuit—resulted from a *de novo* review of the record. *See* Decision of the Sec'y at 1, 11 (AR_000001, 000011). Accordingly, ACICS is incapable of showing that, in issuing its final analysis and report, the Department staff engaged in procedural error, or that any purported procedural error was prejudicial.

**B. NACIQI Complied with Relevant Regulations.**

ACICS next contends that two errors occurred at the NACIQI hearing: (1) NACIQI allowed presentations by "improper" third-party commenters; and (2) NACIQI was subject to "improper political influence." *See* ACICS Mot. for Summ. J. at 39-41.

With respect to the first issue, ACICS contends that the regulations allow presentations of comments at the NACIQI hearing only by those "who submitted written comments *concerning the agency's compliance with the criteria* for recognition.'" *Id.* at 39 (emphasis in original) (citing 34 C.F.R. § 602.34(d)). ACICS's urged interpretation is inconsistent with explicit statutory and regulatory requirements. The HEA requires that each NACIQI meeting "shall include, at a minimum, opportunity for public comment." 20 U.S.C.A. § 1011c(d)(2)(B); *see also id.* § 1099b(n)(1)(A) (specifying that the "comprehensive review and evaluation of the performance of … accrediting agencies" shall include "the solicitation of third-party information concerning the performance of the accrediting agency or association"); *id.* § 1099b(n)(3) ("The Secretary shall consider all available relevant information … including any complaints or legal

actions against such agency … .”). Additionally, a separate provision of the same regulation cited by ACICS requires that NACIQI "invite[] Department staff, the agency, and *other interested parties* to make oral presentations during the meeting." 34 C.F.R. § 602.34(e) (emphasis added). Thus, both the statute and the regulation contemplate that any interested member of the public may present to NACIQI, without regard as to whether those commenters previously submitted written comments. Neither the statute nor the regulations limit the scope of allowable comments in the manner asserted by ACICS.

ACICS takes particular issue with a presentation made by an Assistant Attorney General from the State of Maryland. ACICS Mot. for Summ. J. at 39. That individual, however, was both a member of the public and in "interested party." Accordingly, both the HEA and its implementing regulations contradict ACICS's contention that allowing him to present constituted a procedural error.

With respect to the second issue, ACICS contends that improper political influence was exerted by the Under Secretary who delivered remarks at the opening day of the NACIQI meeting. *See* ACICS Mot. for Summ J. at 39-40. The Under Secretary did not deliver his remarks on the day that NACIQI considered ACICS's application, nor did he mention ACICS in his statements. *Id.* Thus, ACICS cannot show any prejudice arising from those remarks. In any event, no regulation prohibits the Under Secretary from expressing his views to NACIQI. To the contrary, as mentioned above, even had the Under Secretary chosen to make his comments during NACIQI's consideration of ACICS, the HEA and the regulations affirmatively require NACIQI to provide any interested individuals an opportunity to present comments regarding pending applications. *See* 20 U.S.C. § 1011c(d)(2)(B); 34 C.F.R. § 602.34(e).

ACICS also alleges that improper political influence was exerted on NACIQI by U.S. Senator Elizabeth Warren, who issued a report critical of ACICS two weeks prior to the NACIQI hearing. *See* ACICS Mot. for Summ. J. at 40-41. Like its other arguments, ACICS fails to identify any procedural requirements prescribed by applicable statutes, regulations, or the Constitution to which the NACIQI or the Department failed to adhere. Of course, no legal authority exists suggesting that the Department is authorized and obligated to prohibit members of the public, including sitting federal politicians, from issuing public statements in the weeks preceding a NACIQI meeting. Such a position would seem to contravene basic principles of First Amendment jurisprudence, and, accordingly, should be rejected by the Court. Nor does ACICS point to any support for the proposition that the publication of a report in advance of a federal committee hearing is alone sufficient to render the hearing procedurally flawed. If accepted, that argument would empower any public figure to invalidate preemptively the results of a federal committee hearing simply by issuing a report in advance of the hearing date. Such an argument is untenable. The report was not included in the documentary record before NACIQI, nor was it discussed during the hearing. *See* Tr. of June 23, 2016 NACIQI Hr'g (AR_000470-762).

**C. <u>The SDO Complied with Relevant Regulations.</u>**

ACICS next contends that the SDO erred by issuing a decision that ACICS considers to be too short and lacking in depth of analysis. ACICS Mot. for Summ J. at 41-45. The governing regulations do not require the SDO to issue a decision of a minimum length. Rather, they require the SDO to "specif[y] the reasons for [her] decision, including all criteria the agency fails to meet and all criteria the agency has failed to apply effectively." 34 C.F.R. § 602.36(e)(2)(ii)). The SDO satisfied that requirement. The SDO expressed the basis for her determination and

specifically enumerated the criteria that ACICS failed to meet or apply effectively. *See* SDO Decision at 1-3 (AR_000314-000316). Specifically, the SDO:

(1) confirmed her *de novo* review of the record;

(2) addressed arguments made at the NACIQI hearing, including reference to the judgment of multiple NACIQI members who concluded that ACICS was noncompliant and would be unable to come into compliance within 12 months;

(3) identified specific, "fundamental problems with the agency's functions as an accreditor;" found that ACICS's noncompliance "is serious and long-standing" and that ACICS "still had not fully addressed issues originally identified in 2013, such as verification of placement information from institutions;"

(4) acknowledged ACICS's efforts to address its deficiencies, but noted that those efforts "began in earnest just several months ago, despite [ACICS] having reason to take action long before that;" and

(5) recognized that demonstration of compliance required more that the mere adoption of new standards and policies, it required evidence of effective implementation of those standards and policies—a task which ACICS admittedly had not achieved and that it was unlikely to achieve within 12 months given the severity of ACICS's non-compliance and its historical lack of effective implementation. *Id.*

ACICS is not entitled to more from the SDO. Moreover, because ACICS appealed the SDO decision to the Secretary, and because the Secretary conducted a *de novo* review on appeal and issued the final decision of the Department, ACICS is incapable of establishing prejudice from the SDO's purported shortcomings. *See, e.g.*, Decision of the Sec'y at 11 ("[I]n this

decision I have *de novo* taken into account all of the prior proceedings and available evidence, including ACICS's arguments on appeal.").

Accordingly, because ACICS fails to meet its burden of establishing prejudicial procedural error, defendants are entitled to summary judgment on ACICS's procedural claim.

## CONCLUSION

For the reasons stated above, defendants respectfully request the Court grant summary judgment to defendants and deny ACICS's motion for summary judgment.

Dated: April 28, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

SHEILA M. LEIBER
Deputy Director

*/s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS
Senior Counsel
(N.Y. Bar Registration No. 4461679)
STEPHEN J. BUCKINGHAM
Special Counsel (Maryland Bar)
U.S. Department of Justice, Civil Division
Federal Programs Branch
Tel: (202) 514-3336
Fax: (202) 616-8470
Email: Lisa.Marcus@usdoj.gov
P.O. Box 883 Ben Franklin Station
Washington, DC 20044

*Attorneys for Defendants*