**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND SCHOOLS,<br><br>      Plaintiff,<br><br> v.<br><br>BETSY DEVOS, in her official capacity as Secretary of the Department of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br><br>     Defendants. | Civil Action No. 16-2448 (RBW) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY**
**JUDGMENT AND REPLY IN FURTHER SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .....................................................................................1

ARGUMENT .............................................................................................................1

I.     THE COURT CAN REVIEW THE DEPARTMENT'S DECISION TO
TERMINATE ACICS'S RECOGNITION ................................................ 1

II.     THE DEPARTMENT DISTORTS THE FACTS ........................................ 5

III.     AS A RESULT OF PERVASIVE PROCEDURAL ERRORS THE SECRETARY
DID NOT MAKE A REASONED DECISION ......................................... 7

     A.     The Secretary Failed To Consider Relevant Evidence Submitted By ACICS In
Response To The Office Of The Under Secretary's Request .......................... 7

         1.     The Department Cannot Cure Its APA Violation With Post Hoc
Rationalizations ............................................................................ 8

         2.     The Department's Argument That ACICS Had "ample
opportunity" To "Cure" Deficiencies In The Evidentiary Record
Also Fails ................................................................................. 10

     B.     ACICS Suffered Prejudice ............................................................ 11

IV.     THE SECRETARY'S DECISION DOES NOT REFLECT REASONED DECISION-
MAKING ................................................................................... 13

     A.     The Secretary's Decision Was Irremediably Flawed Because The Secretary
Ignored The Complete, Material, And Dynamic Evidence Submitted By
ACICS ...................................................................................... 13

     B.     Problems At Each Stage Of The Recognition Process Affected The
Secretary's Decision .................................................................... 15

V.     THE PREJUDICE CASED BY THE DEPARTMENT'S GLARING ERRORS IS
NOT ABSOLVED BECAUSE OF ACICS'S SO-CALLED "ADMISSION" AND
THE SANCTION IMPOSED IS AN ABUSE OF DISCRETION ........................... 19

CONCLUSION .......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
    513 F. Supp. 2d 190 (M.D. Pa. 2007) ....................................................................16

*Aragon v. Tillerson*,
    No. 16-129, 2017 WL 721973 (D.D.C. Feb. 23, 2017) ...................................15, 18

*Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Shalala*,
    No. 93-2419, 1995 WL 324710 (D.D.C. Mar. 30, 1995) ..........................................3

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984).....................................................................................................4

*Bros. v. U.S. Dep't of Agric.*,
    No. 87-1190, 1988 WL 76618 (D.C. Cir. Apr. 19, 1988).......................................23

*Butte County v. Hogen*,
    613 F.3d 190 (D.C. Cir. 2010) ............................................................................7, 15

*Capital Area Immigrant's Rights Coalition v. U.S. Dept. of Justice*,
    264 F. Supp. 2d 14 (D.D.C. 2003) .............................................................................3

*FHFA v. JP Morgan Chase & Co*,
    978 F. Supp. 2d 267 (S.D.N.Y. 2013)......................................................................21

*Lone Mountain Processing, Inc. v. Secretary of Labor*,
    709 F.3d 1161 (D.C. Cir. 2013) .................................................................................3

*Morall v. Drug Enforcement Agency*,
    412 F.3d 165 (D.C. Cir. 2005) .................................................................................23

*Mori v. Dep't of the Navy*,
    917 F. Supp. 2d 60 (D.D.C. 2013) ...........................................................................18

*In the Matter of Northwest Comm'n on Colleges & Universities*,
    Decision of the Secretary, No. 14-07-O4, December 11, 2014, *available at*
    http://oha.ed.gov/secretarycases/2014-7-O-S .............................................................3

*PPL Wallingford Energy LLC v. FERC*,
    419 F.3d 1194 (D.C. Cir. 2005) .......................................................................3, 7, 9

*Pharm. Research & Mfrs. of Am. v. FTC*,
    790 F.3d 198 (D.C. Cir. 2015) ...................................................................................7

*Price v. U.S. Dep't of Ed.*,
  H-14-3441, 2016 WL 3976400 (S.D. Tex. July 22, 2016) ....................................................16

*Safari Club Int'l v. Jewell*,
  842 F.3d 1280 (D.C. Cir. 2016) ....................................................15

*In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of*
  *Governors of Fed. Reserve Sys. ("Fleet")*,
  967 F.2d 630 (D.C. Cir. 1992) ....................................................21

*United W. Bank v. Office of Thrift Supervision*,
  853 F. Supp. 2d 212 (D.D.C. 2012) ....................................................21

**Statutes**

20 U.S.C. § 1099b(1) ....................................................5

20 U.S.C. § 1099b(n) ....................................................13

20 U.S.C. § 1099b(n)(1) ....................................................9

20 U.S.C. § 1099b(n)(3) ....................................................6, 9

**Other Authorities**

34 C.F.R. 602.16(a)(1)(i) ....................................................17

34 C.F.R. 602.16(a) & 602.17 ....................................................20

34 C.F.R. 602.19(b) ....................................................20

34 C.F.R. § 602.20(a) ....................................................20

34 C.F.R. § 603.24(b)(1)(iv) ....................................................20

34 C.F.R. §§ 603.24(d)(1)-(2) ....................................................20

34 C.F.R. 602.30-602.38 ....................................................4

34 C.F.R. §§ 602.31(a)(2), 602.32(c), 602.3(e)(2), 602.37(d) ....................................................5

34 C.F.R. 602.32(b) ....................................................6

34 C.F.R. 602.32(b), 602.36 ....................................................9

34 C.F.R. 602.32(b), (f)(4) ....................................................16

34 C.F.R. 602.32(f) ....................................................6, 9

34 C.F.R. 602.32(g) ..........................................................................................................9

34 C.F.R. 602.33 ..............................................................................................................6

34 C.F.R. 602.36(e)(3)(i) ...............................................................................................20

34 C.F.R. 602.36(e)(3)(ii) ..............................................................................................20

34 C.F.R. § 602.34(d) .....................................................................................................18

63 Fed. Reg. 58399 (Oct. 30, 1998) ...............................................................................23

65 Fed. Reg. 19,618 (Apr. 11, 2000) .............................................................................23

## PRELIMINARY STATEMENT

ACICS's opening brief detailed the egregious procedural errors that resulted in the Secretary's arbitrary and capricious final decision to terminate ACICS's recognition, including the fatal defect caused by the Department's failure to consider 36,000 pages of material, relevant information specifically requested by the Under Secretary. The Department's brief practically ignores its highly prejudicial omission. The Court, however, must hold the Department accountable and vacate the Secretary's decision.

Further, the Department's brief improperly treats ACICS's candor before its regulator under a strict-liability-type standard. The Department suggests that a so-called "admission" by ACICS alone warranted termination of ACICS's recognition and absolves the Department of its failure to engage in the reasoned decision-making required by the APA and the Department's regulations. The Department's position runs contrary to the facts, to its regulations, and to public policy.

## ARGUMENT

I. **The Court Can Review The Department's Decision to Terminate ACICS's Recognition**

The Department erroneously argues that the Secretary's decision to revoke ACICS's recognition is not reviewable. But the Department readily acknowledges that under the Department's own regulations "a Secretary's ultimate decision to deny, limit, suspend, or terminate an agency' recognition" can be reviewed. Opp. at 16 (citing 34 C.F.R. 602.38). Indeed, here, ACICS challenges the "Secretary's ultimate decision to … terminate" ACICS's recognition.[1] The Department, however, takes the narrow, and misguided, view that—despite

---

[1] *See* Compl. ¶ 6 ("The Secretary's *decision to terminate ACICS's recognition* violates the Administrative Procedure Act and must be set aside") (emphasis added); *id.* ¶ 48 ("[T]he

the plain language of the regulation—the Secretary's decision to terminate ACICS's recognition is nonetheless unreviewable because various remedies are available to the Secretary and, according to the Department, there are no judicially manageable standards by which a Court can evaluate the Secretary's decision. Opp. at 14-16. The Department's argument is incorrect for several reasons.

First, the Department's regulation expressly entitling an accrediting agency to judicial review of the Secretary's decision necessarily includes the Secretary's "choice of remedy," including termination. The Department attempts to draw an artificial distinction between the Secretary's finding of non-compliance with the recognition criteria (liability of sorts) and the Secretary's decision to "deny, limit, suspend, or terminate" an agency's federal recognition (a remedy of sorts). Opp. at 13-16. But nothing in the Higher Education Act or the Department's regulations draws this distinction. To the contrary, Regulation Section 602.38, entitled "Contesting the Secretary's final decision to deny, limit, suspend, or terminate an agency's recognition," expressly states: "An agency may contest the Secretary's decision *under this part* in the Federal courts as a final decision in accordance with applicable Federal law." (emphasis added). Thus the Court may review a decision to terminate an agency's recognition. Given this, it is not surprising that the Department previously acknowledged: "[A]ny [accrediting] agency

---

Department of Education's *decision to terminate ACICS's recognition* was arbitrary and capricious for several reasons.") (emphasis added); Compl. ¶ 78 ("the Secretary of Education's *decision to terminate ACICS's recognition* as an accrediting agency is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' given the lack of record evidence to support the decision, the procedural irregularities that infected the recognition process, the unfair politicization of the process, and the failure to consider the irreparable harm being imposed on innocent institutions and students as a result of the decision to terminate ACICS's recognition.") (emphasis added); ECF 55 at 1 (ACICS's Mtn. Sum. Judgment) ("Defendant's actions in *terminating ACICS's recognition* violated the Administrative Procedure Act because *the termination decision* was arbitrary and capricious and was the result of a procedurally defective process.") (emphasis added).

may appeal the Secretary's final decision to Federal court . . . ."  *In the Matter of Northwest Comm'n on Colleges & Universities*, Decision of the Secretary, No. 14-07-O at 4, December 11, 2014, *available at* http://oha.ed.gov/secretarycases/2014-7-O-S.pdf.

Further, although the Department is afforded discretion in discharging its recognition responsibilities, that discretion is not unlimited.  *See, e.g.*, *Lone Mountain Processing, Inc. v. Secretary of Labor*, 709 F.3d 1161, 1163 (D.C. Cir. 2013) ("discretion is not unfettered"); *see also Am. Petroleum Tankers Parent, LLC,* 943 F. Supp. 2d 59, 67 (D.D.C. 2013) ("Language allowing for discretion does not create unlimited discretion") (internal citations omitted); *Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Shalala*, No. 93-2419, 1995 WL 324710, at *4 (D.D.C. Mar. 30, 1995) ("Although Congress and the federal judiciary have generally afforded the administrative agencies broad discretion, agencies do not act with unfettered discretion."); *Capital Area Immigrant's Rights Coalition v. U.S. Dept. of Justice*, 264 F. Supp. 2d 14, 23 (D.D.C. 2003) ("In the absence of clear congressional intent to preclude review, judicial review is available to hold an [administrative] agency to the procedural and substantive standards contained in its own regulations governing administrative action, even where the statute grants the agency absolute discretion over administrative decisions.") (citing *Center for Auto Safety v. Dole*, 828 F.2d 799, 807 & n. 11 (D.C. Cir. 1987)).

Under the APA, the Department's exercise of its discretion can be reviewed by the Court, and the Department's decision must be reversed when, as here, the Department has acted in a manner that is arbitrary, capricious, without observance of required procedures, and contrary to law.  A federal agency's decision can be shielded from review only under narrow circumstances, none of which are present here.  There is no "specific language or specific legislative history that is a reliable indicator of congressional intent" to commit the decision to unreviewable agency

discretion.  *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).  Nor is this one of

"those rare instances where statutes are drawn in such broad terms that in a given case there is no

law to apply."  *See Am. Petroleum Tankers Parent,* 943 F. Supp. 2d at 66 (quoting *Citizens to

Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).  And the applicable statute and

regulations are not "drawn so that a court would have no meaningful standard against which to

judge the agency's exercise of discretion."  *Id.* (*quoting Heckler v. Chaney*, 470 U.S. 821, 830

(1985)).  Rather, as explained above, the regulations make clear on their face that the

Department's decision-making is reviewable and, as explained below, the regulations set forth

meaningful procedural standards by which to judge whether the Department abused its exercise

of discretion.

        The Department's regulations codify detailed standards and procedures, *see* 34 C.F.R.

602.30-602.38, that govern the recognition process and decision-making.  The procedures

include, for example, the requirement that Department staff consider "all available relevant

information" (602.32(b)); the protocol for drafting and finalizing the staff report (602.32(f)); the

information to be provided to and considered by the NACIQI panel (602.34(c), (3)); and the

protocol for the senior Department official's determination, appeal of that determination to the

Secretary and, ultimately, appeal to the federal courts (602.36(e), 602.37, 602.38).  Each of these

regulatory provisions evidences an intent that the Department's recognition decision – including

the procedures it followed (or did not follow) in reaching that decision – to be judicially

reviewed.

        The Secretary's decision to terminate ACICS's recognition is, therefore, reviewable

under the Department's own regulations, the relevant case law, and the APA.

## II.    **The Department Distorts the Facts**

The parties are generally in agreement as to the timeline of the Department's review of ACICS's January 2016 Petition for Continued Recognition ("ACICS's Petition").  The Department's brief, however, mischaracterizes or glosses over several salient facts.

*First*, the Department mischaracterizes facts about ACICS's 2011 petition for recognition; of course, the 2011 submissions, proceedings, and determinations were not before the Department in connection with its consideration of ACICS's 2016 petition.  Suffice it to say, however, that although the Department makes sweeping generalizations about ACICS's alleged non-compliance in 2011 (*see* Opp. at 2), it is indisputable that, after ACICS filed a compliance report, the Department granted ACICS ***full, unconditional federal recognition*** in 2013.  As the Department acknowledges in its brief: "To demonstrate compliance with [the recognition] criteria, an agency must have standards and policies in place that comport with the regulatory requirements, and the accrediting agency must be able to prove the effectiveness of those policies and procedures in evaluating IHEs.  *See, e.g.*, 20 U.S.C. §§ 1099b(1); 34 C.F.R. §§ 602.31(a)(2), 602.32(c), 602.3(e)(2), 602.37(d)."  Opp. at 5.  It strains credulity for the Department to now argue that ACICS—to which, in 2013, the Department had granted unconditional recognition—was, in 2016, a prodigal agency seeking "yet another chance." Opp. at 2.  The Department's revisionist history is particularly troubling given that none of the records from ACICS's 2011 petition and 2012 compliance report are part of the record here—and appropriately so; the Court should reject the Department's attempts to decontextualize and mischaracterize prior recognition proceedings to justify its current arguments.

*Second*, and relatedly, the Department's mischaracterizations of ACICS's purported "history of non-compliance" (Opp. at 18) ignores a key aspect of the Department's oversight and

review of accrediting agencies.  Specifically, the Department does not mention 34 C.F.R. 602.33, which allows the Department to "review the compliance of a recognized agency with the criteria for recognition at any time" at the request of NACIQI or "[b]ased on any information that, as determined by Department staff, appears credible and raises issues relevant to recognition."  Although the Department and ACICS regularly engaged between 2013 and 2016, the Department never identified any "issues relevant to [ACICS's] recognition" let alone sought to review ACICS's compliance efforts.

*Third*, the Department conspicuously omits two key components of the "extensive administrative process governing recognition decisions": (1) the regulatory requirement that the Department staff must "tak[e] into account all available relevant information concerning the compliance of the agency" (34 C.F.R. 602.32(b)); and (2) the statutory requirement in the Higher Education Act that the Secretary "shall consider all available relevant information concerning the compliance of the accrediting agency" (20 U.S.C. § 1099b(n)(3)).  As noted above and discussed more fully below, these requirements are germane to judicial review under the arbitrary and capricious standard and crucial obligations with which the Department must (but failed to) comply.

*Fourth*, the Department erroneously implies that it was constrained under the Department's regulations to give ACICS only thirty days to respond to the draft staff analysis. In fact, the relevant regulation sets a thirty-day minimum *floor*: the petitioning agency is invited to respond to the Draft Report and any third party comments, and is to be given **at least** 30 days to do so.  *See* 34 C.F.R. 602.32(f).  This timing is relevant because the Department knew that when the Department issued its draft staff report on May 4, 2016, ACICS was working to respond to the onerous requests from the Office of the Under Secretary ("OUS Request"), which

6

were due on May 16, 2016. *See* ECF 55 at 6-11 (ACICS's Mtn. Sum. Judgment). Although ACICS was in the midst of compiling its response to Section II of the OUS Request, the Department denied ACICS's request for an extension of time to respond to the draft Staff Report. *See* AR_000429.

### III.     As A Result Of Pervasive Procedural Errors The Secretary Did Not Make A Reasoned Decision

The law is well-settled that administrative agencies must engage in "reasoned decision-making," which is the "touchstone of arbitrary and capricious review." *See Pharm. Research & Mfrs. of Am. v. FTC,* 790 F.3d 198, 209 (D.C. Cir. 2015) (internal quotations and citation omitted). Simply put, "the agency must explain why it decided to act as it did," *Butte County v. Hogen,* 613 F.3d 190, 194 (D.C. Cir. 2010), and an "agency must [have] examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *PPL Wallingford Energy LLC v. FERC,* 419 F.3d 1194, 1198 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43) (internal quotation marks omitted). Here, the Secretary's failure to consider relevant and dynamic evidence precluded the Secretary from engaging in the "reasoned decision-making" required under the APA.

#### A.     The Secretary Failed To Consider Relevant Evidence Submitted By ACICS In Response To The Office Of The Under Secretary's Request

Throughout its brief, the Department repeatedly asserts that the Secretary's decision was rationally related to "record evidence" and therefore did not violate the APA. *See, e.g.*, Opp. at 3, 4, 18-19, 21-28. But the Secretary did not have the evidence upon which to render a rational decision.

The complete record evidence requested and collected by the Department was not presented to the Secretary. Rather, in violation of the APA, the Department made the irrational, arbitrary, and capricious decision to deprive the Secretary of over 36,000 pages of information

submitted by ACICS in response to specific requests from the Office of the Under Secretary.   As

a result, and also in violation of the APA, the record before the Secretary was woefully

incomplete,[2] and rendered the Secretary unable to render a rational decision.

The Department does not dispute that the Secretary failed to consider the more than

36,000 pages of information that was, in the Department's own words, "tied to the recognition

process" and "important" to its evaluation of ACICS's compliance with the Recognition Criteria.

*See* AR_000437, AR_000434.  Nor does the Department dispute—because it cannot—that this

information was, in fact, relevant to the Department's evaluation of ACICS's Petition.  *See* Opp.

at 32-34.  Instead, the Department argues that it was justified in choosing to ignore this evidence

because (a) the Department's regulations do not "provide an unlimited time for the submission of

supplemental information," and (b) ACICS had "ample opportunity to cure any deficiencies it

believed existed in the evidentiary record."  Opp. at 32-33.  Both of these arguments fail.

### 1.    The Department Cannot Cure Its APA Violation With Post Hoc Rationalizations

Neither the Secretary, nor the Department Staff or SDO before him, articulated any

explanation for ignoring this highly relevant body of evidence.  Now, for the first time, the

Department argues that it could not have considered the information that it <u>specifically requested</u>

because doing so would have required an extension of time and "OPE concluded that such an

extension would not have been consistent with the responsible administrative of the [Higher

Education Act]."  Opp. at 33.  But the Secretary's failure to consider this information is a *per se*

---

[2] The Department's brief references the parties' submissions relating to ACICS's motion to
supplement the Administrative Record.  Opp. at 8-9, n.2.  Regardless of the outcome of ACICS's
Motion to Supplement the Administrative Record, the Court should hold that ACICS is entitled
to summary judgment based, alone, on the Department's concession that the materials "were not
considered, directly or indirectly, by any agency decision makers at any point in the
administrative process."  *Id.*

violation of the Higher Education Act, which requires the Secretary to "conduct an independent evaluation of the information provided by [an] agency" seeking recognition.  20 U.S.C. § 1099b(n)(1); *see also* 20 U.S.C. § 1099b(n)(3) ("The Secretary shall consider all available relevant information concerning the compliance of the accrediting agency … with the criteria."). It also is a *per se* violation of the Department's Regulations, which require the Department to take into account "all available relevant information" to an agency's compliance with the Recognition Criteria.  34 C.F.R. 602.32(b), 602.36.

These statutory and regulatory violations constitute a clear violation of the APA's requirement that a federal agency must "examine the relevant data" before taking an administrative action.  *PPL Wallingford Energy LLC*, 419 F.3d at 1198.  The Department cannot justify the disregard of its statutory and regulatory mandate to review all available relevant information by making the unsupported excuse that it did not have "unlimited time."  Opp. at 33. As noted above, the Department's regulations contemplate extending the deadline for a petitioning agency (here, ACICS) to respond to a draft staff report and deferring the NACIQI meeting until the Department has completed its review.  *See* 34 C.F.R. 602.32(g) ("The [Department] may request that the [NACIQI] defer acting on an application at that [NACIQI] meeting…"); 34 C.F.R. 602.32(f) (the Department "[i]nvites the agency to provide a written response to the draft analysis and proposed recognition recommendation and third-party comments, specifying a deadline that provides *at least 30 days* for the agency's response.") (emphasis added).

Notably, the Department initially anticipated—due to the enormity of the Under Secretary's request—that ACICS would appear at a later NACIQI meeting.  The Department wrote, on March 15, 2016: "[G]iven that information received as late as May 16, 2016, would

not allow Department staff the time to fully review and analyze it in time for the June NACIQI meeting, *ACICS should be prepared to return at the fall NACIQI meeting for further discussion and possible action as warranted.*"  AR_000434 (Mar. 15 Email from H. Bounds) (emphasis added).  The Secretary and Department cannot avoid an APA violation by claiming, after the fact, and without factual or legal support, that they did not have the time to consider ACICS's material, relevant evidence, especially when the Department's delay created the scheduling problem in the first place.

> **2.    The Department's Argument That ACICS Had "ample opportunity" To "Cure" Deficiencies In The Evidentiary Record Also Fails**

The Department contends that ACICS could have "cure[d]" any perceived evidentiary deficiencies at two points during the Department Staff's review: in January 2016 with ACICS's submission of its Petition, or on June 3, 2016 with ACICS's response to the draft staff analysis. Opp. at 33-34.  The Department's suggestion that ACICS could have "cured" the Department's procedural violation in January 2016, when ACICS submitted its petition, is contrary to reason: the Office of the Under Secretary did not pose its "additional questions for response from ACICS" until March 3, 2016.  AR_00437-438.  Notably, there is nothing in the Department's March 3 transmittal email or the attached requests from the Under Secretary to suggest that ACICS's initial submission was somehow deficient.  *See id.*

Further, the Department's suggestion that ACICS could have, and should have, submitted its 36,000-page submission a second time (on June 3, in connection with ACICS's response to the May 4 draft staff report and analysis),[3] fatally undercuts the Department's contention that it could not (and did not) review the evidence because it did not have "unlimited time" to do so.

---

[3] At no point did the Department request that ACICS re-file its May 16 submission.

Put differently, the Department attempts to excuse its glaring failure to consider all of the

relevant evidence ACICS submitted on May 16 by claiming that there simply was no time to do

so before the June NACIQI meeting, while at the same time the Department claims that it *would

have considered* the relevant evidence had ACICS re-submitted it on June 3.[4]  The Court should

reject the Department's post hoc justifications for its *per se* violations of the statute and

regulations.

### B.     ACICS Suffered Prejudice

When a regulatory agency does not consider 36,000 pages of information it specifically

requested from a party, the party that produced the information has been prejudiced by the

regulatory agency's conduct.

The Department suggests that ACICS faces a steep burden in demonstrating that the

Department's error was not harmless.  Opp. at 34.  This is not so.  The authority the Department

relies upon instructs that the claimant's burden of showing that an error was harmful:

> is "not ... a particularly onerous requirement," *Shinseki v. Sanders*, 556 U.S. 396,
> 129 S. Ct. 1696, 1706, 173 L.Ed.2d 532 (2009), and the Supreme Court has
> cautioned courts applying the rule against "us[ing] mandatory presumptions and
> rigid rules rather than case-specific application of judgment, based upon
> examination of the record." *Id*. at 1704–05.  If prejudice is obvious to the court,
> the party challenging agency action need not demonstrate anything further.  *Id*. at
> 1706.

Opp. at 28-29 (citing *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121

(D.C. Cir. 2010)).  Here, the prejudice is obvious.  The Department emphasized the materiality

of the information sought in the OUS Request, stating: "the information we requested is

important to the Department's responsibility to monitor and review ACICS's effectiveness as a

---

[4] Nor is it reasonable for the Department to argue that because ACICS's June 3 response to the
draft Staff Report cited several documents ACICS also had submitted on May 16, this relieved
the Department from considering ACICS's entire response to the OUS Request.  *See* Opp. at 33.

recognized accrediting agency."  *See* AR_000434.  In fact, the information requested by OUS

pertained to underline out of the twenty-one regulatory criteria with which the Department staff

asserted ACICS was out of compliance.  *Compare* AR_000439-442 (OUS Request Part II) *with*

AR_000003 (Sec'y Decision).

The materiality of the information requested by the Under Secretary is inescapably

obvious when the Secretary's final decision is examined.  The five regulatory criteria identified

in the body of the Secretary's Decision[5] are criteria for which the Under Secretary required

ACICS to provide additional information, as demonstrated by the following chart:

| Regulation Section | Title | Discussed by Secretary? | Sought in Under Secretary Request No. II? |
|---|---|---|---|
| 602.16(a) | Rigorous Accreditation Standards | Yes (page 6) | Yes (Question II(d)) |
| 602.17 | Application of Standards | Yes (page 6) | Yes (Question II(g), end) |
| 602.19(b) | Monitoring of Accredited Institutions | Yes (page 7) | Yes (Question II(h)) |
| 602.20 | Enforcement of Standards | Yes (page 7) | Yes (Question II(i)) |
| 602.21 | Agency's Review of its Standards | Yes (page 8) | Yes (Question II(j)) |

Thus, the Secretary chose to focus on a handful of criteria as justification for terminating

ACICS's recognition, yet the Secretary did not consider voluminous information "tied" to these

same criteria produced by ACICS in May 2016.  There is no escaping the prejudice this caused

ACICS.

---

[5] Though the Secretary stated that he incorporated by reference the Department Staff's analysis
and the SDO's decision into the Secretary's Decision, which included references to twenty-one
regulatory criteria, the Secretary nonetheless discussed only five criteria in his Decision.  *See*
AR_000006-10.

It is not the role of the Court or the parties to speculate how the Secretary's decision would have been affected if he had been presented with, and considered, ACICS's material, relevant evidence.  The prejudice caused by the undisputed fact that the Secretary did not consider the evidence requires the Secretary's decision to be vacated and the matter returned to Department Staff to begin the recognition process again.

## IV.   The Secretary's Decision Does Not Reflect Reasoned Decision-Making

Summary judgment in an APA case looks to whether an agency action is supported by "reasoned decision-making" based on the administrative record.  But where, as here, the administrative record is deficient, the final agency decision is also deficient.  ACICS does not dispute the well-settled law that an agency decision will be upheld if there is a "rational connection" between the record and the ultimate decision.  However, here there were no facts found with respect to the ignored 36,000 pages of information "tied" to the recognition criteria, and therefore the Secretary's resulting decision cannot be deemed to reflect a rational connection.  Further, the Secretary's reliance on the flawed staff report, NACIQI hearing, and SDO report that preceded the Secretary's Decision (and which he incorporated) similarly taints the Secretary's ultimate decision and renders it deficient under the APA.

### A.   The Secretary's Decision Was Irremediably Flawed Because The Secretary Ignored The Complete, Material, And Dynamic Evidence Submitted By ACICS

The Department does not dispute that the Secretary failed to consider a detailed narrative and tens of thousands of pages of documents submitted by ACICS in response to the OUS Request.  This fact alone represents a violation of the Secretary's "independent" obligation to consider "all relevant evidence."  20 U.S.C. § 1099b(n).  This glaring omission is underscored throughout the Department's brief.  For example, the Department asserts that the Secretary "conducted a *de novo* review of ACICS's petition, which included a review of the entire record."

13

Opp. at 10 (citing the Secretary's Decision at AR_0000001, 11); *see also* Opp. at 18 ("The

Secretary engaged in a *de novo* review of the entire record and concluded that ACICS was

noncompliant with the regulatory criteria."). This is not accurate. Absent consideration of the

relevant, material evidence submitted by ACICS, the Secretary's evaluation was incomplete.

      Further, the Secretary's decision does not reflect a rigorous independent evaluation of the

limited evidence presented to him; rather, it shows that the Secretary simply adopted the flawed

findings of the Department Staff and SDO. For example, the Department's brief discusses

purported evidence of non-compliance in connection with allegations that ACICS failed to

uncover fraud at certain institutions including Michigan Jewish Institute and campuses of

Corinthian Colleges. Opp. at 24-26. But the Department fails to mention that the OUS Request

specifically sought—and the Department subsequently ignored—information about ACICS's

interactions with those same institutions. AR_000439-442. By ignoring this material

information about the very areas of purported non-compliance on which the Secretary relied to

terminate ACICS's recognition, the Secretary plainly failed to satisfy his obligation to consider

"all relevant evidence" in violation of the APA.

      The Secretary also failed to consider substantial changes ACICS implemented or made

during the *six months* after the June NACIQI meeting before the Secretary rendered his final

decision.[6] The Secretary's Decision glaringly omits any consideration of the substantial changes

ACICS detailed at length in its July 5, 2016 Comments. *See* AR_000396-425 (including an

exhibit entitled "Executive Summary and Detailed Background of ACICS Resolution of 21

Residual Findings of the Department's Staff Report."). As just one example, the Secretary

---

[6] The Department's brief contends that the Secretary "acknowledged" ACICS's substantial post-NACIQI changes, Opp. at 26, but in fact the Secretary relegated this purported analysis to a short footnote summarily dismissing this evidence, without meaningful consideration, as insufficient. AR_000009, n.66.

ignored ACICS's substantial leadership restructuring, particularly ACICS's appointment of

Roger J. Williams—a widely-respected 25-year veteran of management of higher education

accreditation—as the Interim Chief Executive Officer and President.  *See* AR_000120-21; AR-

_000329-40; AR_000025.  This failure reflects arbitrary and capricious decision-making.  *See*

*Aragon v. Tillerson*, No. 16-129, 2017 WL 721973, at *8 (D.D.C. Feb. 23, 2017) (explaining that

the failure to consider relevant evidence that is "at least probative of" an important aspect of an

issue before the administrative agency amounts to an arbitrary and capricious action); *Butte*

*County, Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (Secretary's failure to consider

relevant information violated the longstanding tenet of administrative decision-making that

"[t]he substantiality of evidence must take into account whatever in the record fairly detracts

from its weight") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88 (1951)).

### B.    Problems At Each Stage Of The Recognition Process Affected The Secretary's Decision

The Department argues that the Court is precluded from reviewing any of the procedural

irregularities that preceded the Secretary's Decision because, in its view, the mere fact that the

Secretary's decision is the "final agency action" absolves the Department of any errors that led to

that decision.  Opp. at 29.[7]  In other words, the Department asks the Court to review the

Secretary's Decision entirely in a vacuum despite the Secretary's express incorporation of the

flawed underlying Staff analysis, NACIQI commentary, and SDO decision.  This "trust us"

approach ignores the purpose of judicial review and asks the Court to improperly assume that the

---

[7] The case the Department cites for this point is inapposite.  *See Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016).  Though this case addresses factors for a court to consider in evaluating whether an agency action is "final," (e.g. a decision by the Fish and Wildlife service that it would not issue certain permits), it does not address ACICS's contention here: that by incorporating the staff analysis and SDO decision into the Secretary's Decision those interim steps are an integral part of the final agency action and are therefore reviewable.

Secretary cured all underlying deficiencies.  "[T]he clear terms of § 706(2)(D) provide that

determining whether an agency fulfilled its procedural obligations found in statute or established

rules are subject to invalidation.  It is not difficult to fathom an agency decision that is facially

reasonable, but is rendered in violation of procedural directives.  In such a case, under the

[agency's] approach, if the agency were to reach the right result, the Court must ignore even

blatant procedural violations.  Such an approach would indeed . . . render § 706(2)(D)

superfluous."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 513 F. Supp. 2d 190, 196 (M.D.

Pa. 2007)).  And, here, the Department's decision is not even facially reasonable.

### 1.   The Department Staff's Report Was Rushed and Flawed

The Department staff unquestionably violated its own regulations by failing to consider

the 36,000 pages of information ACICS submitted in response to the onerous OUS Request.  *See*

*Price v. U.S. Dep't of Ed.*, H-14-3441, 2016 WL 3976400 at *5 (S.D. Tex. July 22, 2016)

(finding Department's decision-making process constituted an abuse of discretion where it

"fail[ed] to consider corroborating evidence" in violation of the "express directive of its own

informal policy guidance.").  By disregarding this evidence, the Department staff violated the

Department's regulation by which it must take "into account all relevant information" when

rendering its analysis.  *See* 34 C.F.R. 602.32(b), (f)(4).

Similarly, the involvement of the Under Secretary in the staff review process is not

contemplated under the Department's regulations.  The Department counters that the Under

Secretary is simply the "supervisor" to the Department Staff and thus there is nothing improper

about his involvement.  Opp. at 30.  The Department ignores, however, the comments of its own

staff member Steve Porcelli, who was responsible for drafting the Final Staff Report, who stated

during the NACIQI meeting that the drafting process was irregular, including because he

"received advice from outside" the Office of Postsecondary Education (OPE).  *See* AR_000520:10-11.  Mr. Porcelli went on to state that he did not "want to comment on that" advice, further suggesting that the "outside" involvement had violated the prescribed regulatory process.

Finally, the Staff report made numerous conclusory and unsupported findings.  *See* ACICS's Mtn. Sum. Judgment at 36-38 (ECF 55).  For example, the Department staff found ACICS to be out of compliance with 34 C.F.R. 602.16(a)(1)(i), which requires an agency to evaluate institutional quality by looking to "[s]uccess with respect to student achievement in relation to the institution's mission."  However, the Department ignored the clear evidence of ACICS's compliance with this criteria, including ACICS's use of algorithms designed to further verify job placement data.  *See* AR_000773-774.  Indeed, one NACIQI member expressly commented on the Staff Report's conclusory nature.  *See* AR_000496:1-4 (Anne Neal noting she "was surprised that the presentation [of the Staff Report] was more conclusory than it was explanatory.  To the point that there are even places where there is editorial comment . . . or even assumptions that are presented.").

The Final Staff Report, on which the Secretary expressly relied to base his decision concerning all twenty-one findings of non-compliance, reflected a conclusory analysis that ignored relevant evidence and violated the Department's own regulations.

> 2.  The NACIQI Meeting Was Procedurally Improper and Invited Undue Political Influence

The Department admitted that "most of the commenters [to ACICS's Petition] did not tie their areas of alleged noncompliance to specific sections of the Secretary's Criteria for Recognition," AR_000790, but nonetheless permitted such commenters to level unsubstantiated allegations against ACICS at the NACIQI meeting.  This improper procedure violated the

Department's clear regulatory directive to invite parties who submitted written comments "*concerning the agency's compliance with the criteria* for recognition [] to make oral presentations" at the NACIQI meeting.  *See* 34 C.F.R. § 602.34(d) (emphasis added).  The Department counters that "both the statute and the regulation contemplate that any interested member of the public may present to NACIQI, without regard as to whether those commenters previously submitted written comments," noting particularly that representatives from State Attorneys General fit within this definition.  Opp. at 36.  But by the Department's logic, any representatives from political offices—including members of Congress responsible for appointing NACIQI members or determining its budgetary appropriations—could present at NACIQI, despite the risk that such political commentary may compromise the independence of the NACIQI panel members.  The Department's interpretation of its regulations would vitiate the independent aspect of NACIQI and should be rejected.

### 3. The SDO's Decision Was Glaringly Deficient

The SDO's summary decision disposing of ACICS's petition in a two and one-half page letter rendered conclusory and unsupported judgments—on which the Secretary subsequently relied.  Though the Department cherry-picks a handful of phrases from the SDO's sparse decision and argues that the SDO was not required to do more (Opp. at 37-39), the SDO's failure to meaningfully evaluate the evidence was arbitrary and capricious and the Secretary's reliance on the SDO's decision violated the APA.  *See Tillerson*, 2017 WL 721973, at *8 (finding that the agency "fail[ed] to grapple with" relevant evidence and "inexplicably ignored" certain documents weighing in favor of the plaintiff."); *Mori v. Dep't of the Navy*, 917 F. Supp. 2d 60, 64 (D.D.C. 2013) ("By not discussing plaintiff's evidence, the Secretary leaves plaintiff and the Court to scratch their heads as to why the Secretary found plaintiff's evidence unpersuasive.  An

agency action that lacks explanation is a textbook example of arbitrary and capricious action."). As described more fully in ACICS's opening brief, the SDO's truncated decision ignores precedent as to Staff and NACIQI recommendations, is unclear about what aspects of the record she *relied* upon, makes only passing references to ACICS's evidence with no attempt to identify the deficiencies to which she is referring, and adopts in conclusory fashion the Department Staff's analysis without providing any context or analysis of her own. *See* ACICS's Mtn. Sum. Judgment (ECF 55 at 41-45). The SDO's decision was woefully inadequate and reflected arbitrary and capricious decision-making adopted by the Secretary.

## V.     The Prejudice Cased By The Department's Glaring Errors Is Not Absolved Because of ACICS's So-Called "Admission" And The Sanction Imposed Is An Abuse Of Discretion

The Department suggests that its rampant disregard for procedure and the resulting failure to engage in reasoned decision-making can be excused because of an ACICS "admission" that, alone, warranted termination of ACICS's recognition. The Department's position runs contrary to the facts, to its regulations, and to public policy.

First, none of ACICS's statements and filings with the Department, the NACIQI Panel, or any Department decision-makers can be read as an admission that ACICS could not come into compliance with the Recognition Criteria and deserved the ultimate sanction of revocation of recognition. The "admission" cited by the Department illustrates this. At the NACIQI hearing on June 23, 2016, the ACICS representative stated that, while ACICS did not at that time seek a finding of full compliance, ACICS could be fully compliant with all of the recognition criteria "within one year or sooner." AR_000547. It would have been eminently reasonable and an appropriate exercise of the Department's discretion to have granted ACICS 12 months to do so. The Department's refusal to grant ACICS this opportunity was unreasonable and an abuse of discretion.

The Department's regulations clearly contemplate that non-compliance with the Department's regulations do not require termination.  For example, if "the Senior Department Official [SDO] concludes that the agency will demonstrate or achieve compliance with the criteria for recognition and effective application of those criteria within 12 months or less, the [SDO] may continue the [accrediting] agency's recognition."  *See* 34 C.F.R. 602.36(e)(3)(i). Moreover, upon a showing of good cause, the Department can grant <u>even longer</u> than twelve months to allow an agency to come into compliance with the recognition criteria.  *See* 34 C.F.R. 602.36(e)(3)(ii).  The Department has repeatedly allowed other accrediting agencies, with similar types of findings, to have 12 months with which to come into compliance with the Recognition Criteria.  *See e.g.,* AR_000504:1 ("We extend 12 months all the time …").[8]

To treat ACICS's acknowledgement of its shortcomings during the NACIQI Panel hearing as a strict-liability-type admission necessarily warranting the harshest possible sanction would have a chilling effect on the prospect of open and productive communications between the Department and the agencies it regulates.  If this is the prevailing policy, accrediting agencies

---

[8] ACICS submitted to the Department a chart summarizing 70 petitions for continued recognition heard by NACIQI since December 2010 in which an agency was sound to have one or more violations of the Recognition Criteria.  *See* AR_000427.  The Department ignores this evidence, which shows that in all but one of those matters, Department Staff and NACIQI recommended that the institution be given more time to come into compliance.  *See* AR_000140; *see also* SDO 10.28.16 Decision allowing 12-month extension for American Osteopathic Association to comply with 18 recognition criteria, including criteria concerning standards and application of standards (34 C.F.R. §§ 602.16(a) & 602.17), monitoring of institutions (34 C.F.R. § 602.19(b)), and enforcement (34 C.F.R. § 602.20(a)); SDO 3.10.16 Decision allowing 12-month extension for Oklahoma Department of Career and Technology Education to comply with 12 recognition criteria, including criteria concerning student achievement (34 C.F.R. § 603.24(b)(1)(iv)) and fostering ethical practices (34 C.F.R. §§ 603.24(d)(1)-(2)); SDO 4.5.16 Decision allowing 12-month extension for Western Association of Schools and Colleges, Accrediting Commission for Community and Junior Colleges to comply with 7 recognition criteria, including criteria concerning standards and application of standards (34 C.F.R. §§ 602.16(a) & 602.17), monitoring of institutions (34 C.F.R. § 602.19(b)), and enforcement (34 C.F.R. § 602.20(a)).  All SDO decisions are *available at* https://opeweb.ed.gov/NCFMEA/finalstaffReports.cfm.

would face two equally unpalatable choices: (1) acknowledge their shortcomings in order to work toward a productive solution and out of respect for the collaboration required between regulatory agencies and the entities that they regulate, and, thus, risk losing accreditation for doing so; or (2) categorically deny even legitimate areas for improvement merely to avoid a draconian sanction.  Neither of these options serves the public interest.  As the D.C. Circuit has explained in discussing regulatory regimes in general, and by analogy the banking regulatory regime, candor between regulators and the entities they oversee "is firmly rooted in practical necessity. … The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency." *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys. ("Fleet")*, 967 F.2d 630, 633 (D.C. Cir. 1992).[9]

---

[9] Numerous agencies throughout the federal government recognize this need for candor and incentivize its use:

- As mentioned above, the bank examiner's privilege covers regulatory exchanges involving entities regulated by the Federal Reserve, the Office of the Comptroller of the Currency (OCC), the Federal Deposit Insurance Corporation (FDIC), Federal Housing Finance Agency (FHFA), and others.  *See Fleet*, 967 F.2d at 633-34, 636; *FHFA v. JP Morgan Chase & Co*, 978 F. Supp. 2d 267, 272-74 (S.D.N.Y. 2013) (expanding the bank examiner privilege to the FHFA); *United W. Bank v. Office of Thrift Supervision*, 853 F. Supp. 2d 212 (D.D.C. 2012).

- The Consumer Financial Protection Bureau (CFPB) has articulated a number of "responsible behaviors" that the Bureau views favorably when exercising its enforcement authority.  *See* CFPB Bulletin 2013-06, *available at* http://files.consumerfinance.gov/f/201306_cfpb_bulletin_responsible-conduct.pdf.  The CFPB gives "special mention" to self-reporting which "represents concrete evidence of a party's commitment to responsibly address the conduct at issue." *Id.*

- The U.S. Securities and Exchange Commission has an "Enforcement Cooperation Program" which is "designed to encourage greater cooperation by individuals and companies in SEC investigations" and "provides incentives to individuals and companies who come forward and provide valuable information to SEC investigators."  SEC, Enforcement Cooperation Program, https://www.sec.gov/spotlight/enforcement-cooperation-initiative.shtml.

Further, it bears noting that numerous courts, including the D.C. Circuit, have criticized administrative agencies for arbitrarily issuing that harshest possible sanction.  *See Morall v. Drug Enforcement Agency*, 412 F.3d 165, 181 (D.C. Cir. 2005) ("Even if the agency's decision were sufficiently supported, the penalty imposed—which is the harshest of possible sanctions— would be unwarranted by law."); Carpentino *Bros. v. U.S. Dep't of Agric.*, No. 87-1190, 1988 WL 76618, *4 (D.C. Cir. Apr. 19, 1988) ("In their zeal to carry out their regulatory mission, agencies must not abandon their duty to ensure that the punishment fits the crime.").  Here, the Department's treatment of ACICS's candor under a strict-liability-type standard, coupled with the Department's failure to consider material, relevant information, warrants a finding that the Secretary's decision violated the APA.

## CONCLUSION

Relying on an incomplete and procedurally-flawed record, the Secretary of Education abused his discretion and rendered an arbitrary, capricious, and unlawful decision and order that revoked ACICS's recognition after 60 years, violating the APA.  ACICS respectfully requests

---

- The Environmental Protection Agency has a formal policy statement dedicated to self-reporting and thereby "enhanc[ing] protection of human health and the environment by encouraging regulated entities to voluntarily discover, promptly disclose and expeditiously correct violations of Federal environmental requirements."  EPA, Incentives for Self-Policing: Discovery, Disclosure, Correction and Prevention of Violations, 65 Fed. Reg. 19,618 (Apr. 11, 2000).

- The Department of Health and Human Services has self-reporting mechanics for companies to voluntarily identify, disclose, and resolve potential fraud in Federal health care programs.  *See* Department of Health and Human Services, Offices of Inspector General, Publication of the OIG's Provider Self-Disclosure Protocol, 63 Fed. Reg. 58399 (Oct. 30, 1998) (HHS OIG "believes it must continue encouraging the health care industry to conduct voluntary self-evaluations and providing viable opportunities for self-disclosure"); HHS OIG, Updated OIG's Provider Self-Disclosure Protocol, https://oig.hhs.gov/compliance/self-disclosure-info/files/provider-self-disclosure-protocol.pdf.

that the Court grant ACICS's Motion for Summary Judgment, deny the Department's Cross-

motion for Summary Judgment, set aside the Secretary's Decision, and enter the proposed order

accompanying ACICS's Motion.


Dated: May 12, 2017                     Respectfully submitted,

                                        By: /s/ Allyson B. Baker_____
                                            Allyson B. Baker (#478073)
                                            Meredith L. Boylan (#978088)
                                            Andrew T. Hernacki (# 1024442)
                                            Venable LLP
                                            600 Massachusetts Ave., NW
                                            Washington, DC 20001
                                            202-344-4000 Telephone
                                            202-344-8300 Facsimile
                                            abbaker@venable.com
                                            mlboylan@venable.com
                                            athernacki@venable.com

                                            *Counsel for Accrediting Council for
                                            Independent Colleges and Schools*

**CERTIFICATION OF SERVICE**

I hereby certify that on this 12th day of May 2017, I caused to be electronically filed the foregoing Memorandum of Points and Authorities in Opposition to Defendants' Cross Motion for Summary Judgment and in Further Support of Plaintiff's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will issue an electronic notification of filing to all attorneys to be noticed.

/s/ Allyson B. Baker
Allyson B. Baker