# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND SCHOOLS,<br>　　　　Plaintiff,<br>　　v.<br>BETSY DEVOS,[1] in her official capacity as Secretary of the Department of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 16-2448 (RBW) |

## ORDER

On January 24, 2017, five states and the District of Columbia (collectively, the "States") filed a motion for leave to intervene as of right in this case pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively, with permission from the Court pursuant to Rule 24(b). Motion of the Commonwealth of Massachusetts, the State of Illinois, the State of Maine, the State of New York, the Attorney General of Maryland, and the District of Columbia for Leave to Intervene ("States' Mot.") at 2. The underlying dispute involves a claim by the Accrediting Council for Independent Colleges and Schools ("Accrediting Council") seeking judicial review, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (2012), of the defendants' determination to revoke its recognition as an "accrediting agency" for certain institutions of higher education. See Complaint ("Compl.") ¶¶ 37–42. Upon careful consideration of the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Betsy Devos has been automatically substituted for her predecessor, former Secretary John B. King.

parties' submissions,[2] the Court will grant the States' motion to intervene as of right and deny, as moot, their request for permissive intervention.

## I.    BACKGROUND

According to the Complaint filed in this action, the Accrediting Council is a nonprofit organization that was, until recently, recognized by the Department of Education (the "Department") as an accreditor of certain institutions of higher education.  See generally Compl. ¶¶ 2–5, 8.  On December 12, 2016, the Department issued a final decision revoking the Accrediting Council's recognition as an accrediting agency, id. ¶ 5, citing various grounds, including the Accrediting Council's alleged failure to properly monitor "postsecondary educational institutions and programs," id. ¶ 1; see also id. ¶¶ 41 (discussing the Secretary of Education's final decision); Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Exhibit ("Ex.") 1 (Decision of the Secretary) at 6–8 (discussing the Accrediting Council's alleged noncompliance with Department regulations).  The Accrediting Council thereafter initiated this action seeking judicial review of the Department's decision and simultaneously sought immediate injunctive relief from the Department's decision.  See Compl.; Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Dec. 15, 2016).  Approximately five weeks later, on January 24, 2017, the States filed their motion to intervene, which was accompanied by their proposed opposition to the Accrediting Council's request for injunctive relief.  See generally States' Mot.  The Court heard oral argument on the States' motion to intervene, but also granted the Accrediting

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of the State Movants' Motion to Intervene ("States' Mem."); (2) the Plaintiff's Opposition to State Movants' Motion to Intervene ("Pl.'s Opp'n"); (3) the Defendants' Response to Motion for Leave to Intervene Filed by the Commonwealth of Massachusetts, the States of Illinois, the State of Maine, the State of New York, the Attorney General of Maryland, and the District of Columbia ("Defs.' Resp."); and (4) the State Movants' Reply in Support of Their Motion to Intervene ("States' Reply").

Council's request to fully brief the issues raised by that motion.  See Transcript of Motions Hearing at 4:11–35:11 (Feb. 2, 2017), ECF No. 32.  The motion is now ripe for review.

## II.   STANDARD OF REVIEW

Rule 24(a) states:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  A request for intervention as of right must meet four prerequisites: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests."  Karsner v. Lothian, 532 F.3d 876, 885 (D.C. Cir. 2008).  In addition, "where a party tries to intervene as another defendant, [the party is] required [] to demonstrate Article III standing."  Crossroads Grassroots Policy Strategies v. FEC, 788 F.3d 312, 316 (D.C. Cir. 2015).

Rule 24(b) provides that "[o]n a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of fact or law."  Fed. R. Civ. P. 24(b)(1)(B).  Intervention under this rule has been interpreted as requiring the would-be intervenor to present "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact common with the main action."  EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998).  "[B]ecause 'permissive intervention is an inherently discretionary enterprise,' the court enjoys considerable discretion under Rule 26(b)."  Envt'l Def. v. Leavitt, 329 F. Supp. 2d 55, 66 (D.D.C. 2004) (quoting Nat'l Children's Ctr., 146 F.3d at 1046).

3

## III.  ANALYSIS

A.  **The States' Standing to Intervene**

To establish standing, the States must show: (1) an injury-in-fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury is capable of judicial redress.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992).  The States contend that the injury-in-fact requirement is satisfied here because, should the Court reverse the Department's decision to revoke the Accrediting Council's recognition and reinstate it as an accrediting agency, institutions of higher education will not be subjected to proper monitoring, thus, forcing the States to expend considerable resources pursuing claims against institutions of higher education that violate the States' respective consumer protection laws.  See States' Mem. at 12–13 (arguing that "[the Accrediting Council's] continued operation harms the [States'] interest in protecting students from abuse—[the Accrediting Council's] failure to fulfill its oversight duty has already resulted in financial and personal harm to students and required the [States] to commit significant resources to investigating and combatting these abuses").  The States further argue that "[t]he concrete injuries facing [them], which are traceable to [the Accrediting Council's] success in this litigation, would be prevented by a decision favorable to the [States] upholding the [Department's] termination of [the Accrediting Council's] recognition [as an accreditor]."  Id. at 13.

Regarding the injury-in-fact component of standing, the District of Columbia Circuit recently explained that "[o]ur cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit."  Crossroads, 788 F.3d at 317.

> For example, in Military Toxics Project v. EPA, 146 F.3d 948 (D.C. Cir. 1998), the Chemical Manufacturers Association ("CMA") sought to intervene on the side of

>the [Environmental Protection Agency ("EPA")] in a lawsuit brought by the Military Toxics Project, who sued to overturn an EPA rule favorable to [the] CMA. We concluded [that the ] CMA had standing to intervene because some of its members produced military munitions, and those members benefited from the EPA's rule, such that they "would suffer concrete injury if the court grant[ed] the relief the petitioners [sought]."

Id. (third and fourth alterations in original) (quoting Military Toxics Project, 146 F.3d at 954).

The circumstances of this case are similar to those present in Military Toxics Project. The States, like the intervenor in Military Toxics Project, currently benefit from the Department's decision to revoke the Accrediting Council's recognition as an accrediting agency. See States Mem. at 2–3 (describing the Accrediting Council's alleged accrediting lapses with respect to for-profit colleges engaged in fraudulent or deceptive conduct that were investigated by the States). Thus, if the Court grants the relief requested by the Accrediting Council, i.e., reverses the Department's revocation of the Accrediting Council's recognition, the States "would suffer concrete injury," Military Toxics Project, 146 F.3d at 954. Furthermore, both Crossroads and Military Toxics Project "stand for the proposition that even where the possibility of prevailing on the merits after remand is speculative, a party seeking to uphold a favorable ruling can still suffer a concrete injury in fact." Crossroads, 788 F.3d at 318. The potential that the Department may, on remand, determine once again that the Accrediting Council's recognition as an accrediting agency should be revoked is not a basis for finding that the States lack standing, because the States "ha[ve] a concrete stake in the favorable agency action currently in place," id. at 319, and they stand to be harmed should the Department reverse course and reinstate the Accrediting Council's accrediting authority.

Turning to the remaining two elements of the standing analysis—causation and redressability—the Court concludes that because the States stand to suffer an injury-in-fact if the Accrediting Council succeeds in this litigation, "then it rationally follows [that] the injury" is

5

fairly traceable to the Accrediting Council's challenge to the Department's termination of its recognition as an accrediting agency, and the States "can prevent the injury by defeating [the Accrediting Council's] challenge in th[is] district court proceeding[]." See Crossroads, 788 F.3d at 316.  The States have therefore satisfied the standing requirement necessary to intervene in this case.

**B.     Intervention Pursuant to Rule 24(a)**

   **1.     Timeliness**

The timeliness of a motion to intervene is "to be judged in consideration of all the circumstances," Roane v. Leonhart, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting Smoke v. Norton, 252 F.3d 468, 471 (D.C. Cir. 2001)), and "even where a would-be intervenor could have intervened sooner, in assessing timeliness[,] a court must weigh whether any delay in seeking intervention 'unfairly disadvantage[d] the original parties,'" id. (second alteration in original) (quoting Nat. Res. Def. Council v. Costle, 561 F.2d 904, 908 (D.C. Cir. 1977)).  Here, the States filed their motion on January 24, 2017, a little over one month after the case was filed, and prior to the filing of any answer or dispositive motions.  The motion to intervene was fully briefed shortly thereafter, and the progress of the underlying case has not been delayed, with the original parties having fully briefed their cross-motions for summary judgment on May 26, 2017.  See Minute Order (Mar. 3, 2017) (requiring that briefing on the parties' cross-motions for summary judgment be completed by May 26, 2017; Reply in Support of the Defendants' Cross-Motion for Summary Judgment (May 26, 2017), ECF No. 69.  On this record, the Court finds no basis to conclude that any party will be "unfairly disadvantaged" by the States' intervention, and therefore concludes that the timeliness element of Rule 24(a) has been met.

### 2. Legally Protected Interest

The District of Columbia Circuit has stated that a potential intervenor "need not show anything more than it has standing to sue in order to demonstrate the existence of a legally protected interest," Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (citing Mausolf v. Babbitt, 85 F.3d 1295, 122–1302 (8th Cir. 1996)); see also Fund for Animals, Inc. v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003) ("Our conclusion that [the party seeking intervention] has constitutional standing is alone sufficient to establish that the [party] has 'an interest relating to the property or transaction at issue which is the subject of the action.'") (quoting Fed. R. Civ. P. 24(a))), which the States have done here, see supra Part III.A.

And even if the States had not already established standing in this case, the Court would still be persuaded by the States' argument that they have a right to intervene under Rule 24(a) to ensure that all three stakeholders of the "long-established 'triad' of higher-education authorities," i.e., the accrediting agency, the federal government, and the several states, are adequately represented in this litigation. States' Mem. at 4. Each of the States has at least one institution of higher education accredited by the Accrediting Council located in its jurisdiction. See id. at 2 n.1 (setting forth the number of schools accredited by the Accrediting Council in each state and the District of Columbia). The States assert that although they play a role in supervising institutions of higher education through enforcement of state regulations, they also "rely on the assessments of federally recognized accreditors in state regulatory and enforcement schemes," id. at 7, and that "it would be logistically implausible and financially impracticable for civil enforcement of consumer protection laws to substitute for rigorous accreditation processes," id. at 8. And far from being merely a "generalized interest in preventing consumer abuses" in their respective states, Pl.'s Opp'n at 6 (quotation marks omitted); see also id. at 9 (incorporating by

7

reference the Accrediting Council's arguments with respect to standing in support of its contention that the States lack an interest in this case under Rule 24(a)), the States' specific interest is that should the prior status of the Accrediting Council be restored by the reversal of the Department's decision by this Court, the Accrediting Council will then "enable[] unsound institutions to flourish," thus "forc[ing the States] to expend resources enforcing their consumer protection laws as a result," States' Reply at 6; see also id. at 8 ("The purpose of the accrediting process is to shield students from improper actors entering the higher education system.").

This Circuit has long recognized that with respect to the Federal Rules of Civil Procedure governing intervention, including Rule 24, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967). This principle, coupled with the States' interest in "protecting students from abuse, preserving the continued functioning of complex regulatory schemes, and safeguarding resources intended to provide financial assistance to students," States' Mem. at 9, convinces the Court that the States have a legally protected interest in this litigation.

### 3. Impairment of Interest

Under this Circuit's case law, the "impairment of interest" element of Rule 24(a)(2) "look[s] to the practical consequences of denying intervention." Fund for Animals, 322 F.3d at 735 (internal quotation marks and citation omitted). This element is easily established here, because if the Court reverses the Department's termination of the Accrediting Council's recognition as an accreditor, its prior status would be reestablished, and the States' interest in ensuring that their citizens are protected from abusive practices by institutions of higher education stands to be impaired as a consequence. See States' Mem. at 10. Furthermore, the

Court is unpersuaded by Accrediting Council's argument that the States may still avail themselves of "the opportunity to comment, per the [relevant Department] regulations, when the Department reconsiders [the Accrediting Council's p]etition," Pl.'s Opp'n at 10, as "it is not enough to deny intervention under [Rule] 24(a)(2) because applicants may vindicate their interests in some later . . . litigation [or proceeding]," Costle, 561 F.2d at 910. The Court therefore finds that this element of the intervention analysis is also satisfied.

### 4.     Adequate Representation

The Supreme Court has stated, as noted by the Circuit, that "the burden of making the [adequate representation] showing should be treated as minimal." Fund for Animals, 322 F.3d at 735 (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)). The Department argues that the States' motion should be denied because "the [States] allege [only] that they 'seek to enter this litigation in order to defend the administrative action of the Department of Education,'" Def.'s Resp. at 2 (quoting States' Mem. at 14), and "the Department . . . [is] capable of adequately defending APA challenges to [its] administrative actions," id. In response, the States contend that the Department "does not share the [States] interest in the protection of state resources expended in the form of enforcement of state consumer protection statues and student financial assistance[,] or in defending the functioning of complicated state regulatory schemes." States' Mem. at 11.

In assessing whether an existing party adequately represents the interests of a potential intervenor, the Circuit has stated that "[a]lthough there may be a partial congruence of interests, that does not guarantee the adequacy of representation." Fund for Animals, 322 F.3d at 737. Here, although the Department represents the broad public concern regarding the integrity of the schools accredited by the Accrediting Council, a concern that undoubtedly overlaps with the

9

States' interest in protecting their citizens, the Court agrees that the Department does not share the States' concerns regarding their regulatory schemes, resources devoted to the enforcement of their consumer protection laws, and state-provided financial aid.  See States' Mem. at 11; cf., e.g., S. Utah Wilderness v. Norton, No. Civ. A. 01-2518(CKK), 2002 WL 32617198, at *5 (D.D.C. June 28, 2002) (finding that a private company had met its "minimal burden of demonstrating that its interests may not be satisfactorily represented by [the d]efendants" when the entity "ha[d] expended substantial funds in pursuit of the leases [at issue] and the [d]efendants [would] not adequately represent the specific interests or economic concerns of" the company (internal quotation marks omitted)).  Given the divergent state and federal interests at issue, the Court finds that the States have shown that their interests are not adequately represented by the Department, warranting their intervention in this case.

## IV.   CONCLUSION

Because the States have demonstrated that they satisfy the requirements of standing and the elements for intervention as of right pursuant to Rule 24(a), the Court will grant the States' motion to intervene as of right, and the Court therefore need not address the States' alternative request for permissive intervention.  Accordingly, it is hereby

**ORDERED** that the States' motion to intervene as of right pursuant to Rule 24(a) is **GRANTED**.  It is further

**ORDERED** that the States' alternative request for permissive intervention is **DENIED AS MOOT**.

**SO ORDERED** this 31st day of August, 2017.

REGGIE B. WALTON<br>United States District Judge